# Moon's Adm'r *v.* Crowder.

*Bill in Equity by Purchaser, for Specific Performance of Contract for Sale of Land, and for Partition.*

1. *Purchase pendente lite.*—A purchaser of land from a party to a pending suit, in which the title or an interest therein is involved, is concluded by the decree afterwards rendered, to the same extent that his vendor is concluded.

2. *Conclusiveness of decree in chancery.*—When the complainant voluntarily dismisses his bill, the decree dismissing it "is very like a voluntary nonsuit at law, which does not bar a second suit;" but, where the decree recites that the cause "again came on to be heard, on the papers formerly read, and the answer of the defendant, with the exhibits filed with said answer, and with general replication to said answer, and upon the report of the master commissioner, made in pursuance of the decretal order of the last term, and was argued by counsel;" and then proceeds, "on consideration whereof, and on motion of the plaintiff, the court doth adjudge, order and decree, that the bill of plaintiff be dismissed, and that he pay to the defendant his costs in this behalf expended, but the defendant is not to be barred or precluded by this decree from asserting or recovering, in any proper suit, any balance which may be found due him by the plaintiff, as set out and asserted in the answer of said defendant, growing out of the account asked for in said bill;" this, *it seems*, is not a voluntary dismissal by plaintiff, but rather only shows that he moved for a decree in the cause.

3. *Proof of handwriting by comparison.*—When the genuineness of a writing or signature is disputed, extraneous writings, though admitted to be genuine, can not be presented to the court or jury, nor shown to a witness, that he may institute a comparison between them and the disputed one.

4. *Same.*—A person who has seen another write, or who knows his handwriting, may express his opinion as to the genuineness of a disputed signature, though he be not an expert; and experts may go further —may institute comparisons between the disputed writing and those admitted to be genuine, and give their opinion whether both were written by the same person, or whether a particular writing or signature is genuine or forged.

5. *Waiver of objections to illegal evidence.*—"Parties may try their controversies on illegal evidence, if they choose to do so;" and if they do not object to illegal evidence when offered, the court may properly consider it.

[Moon's Adm'r v. Crowder.]

6. *Impeaching and sustaining witness.*—When the testimony of a witness has not been impeached, evidence should not be received to sustain his credibility.

7. *Revision of chancellor's decision on facts.*—This court will not reverse the chancellor's decision on a question of fact, unless clearly convinced that he erred; and this general rule applies in this particular case with greater force than usual, since the chancellor had before him the original writing, the genuineness of which was in issue, and other writings admitted to be genuine, none of which are before this court.

8. *Specific performance of contract.*—A court of equity will not specifically execute every contract into which parties may lawfully enter; nor does it necessarily follow that a specific performance will be decreed, because a rescission has been refused at the instance of the defendant, in a former suit between the parties, and that decree is binding as *res adjudicata.* It is always a matter within the judicial discretion of the court, whether to grant or refuse a specific performance; and it may and should be refused, unless the contract is not only legally binding, but also fair, just, and reasonable in all its parts; in other words, there must be " a valuable consideration, particularity, certainty, mutuality, and a necessity for performance."

9. *Same.*—A specific performance is refused in this case, because the evidence is held insufficient to show that the contract was supported by an adequate consideration, and was fair and just in all its parts.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. HENRY C. SPEAKE.

The original bill in this case was filed on the 15th January, 1874, by John S. Moon, a resident citizen of the State of Virginia, against Zachariah R. Lewis, also a citizen of Virginia, John M. Crowder and William P. Newman, who resided in Madison county, Alabama, and several other persons; and sought, principally, the specific performance of a contract, a copy of which was made an exhibit to the bill, and which was in these words:

"Being indebted to John S. Moon, for various professional and other services in connection with the estates of Daniel P. Lewis, deceased, Nicholas P. Lewis, deceased, Zachariah Lewis, deceased, and Howell Lewis, deceased, we agree that said John S. Moon shall, in consideration thereof, be entitled to one-half of our tract of land situated in Madison and Morgan counties, in the State of Alabama, and one-half of the property thereon; which estate and property, we, the undersigned, John O. Lewis and Zachariah R. Lewis, have heretofore been working in partnership; and we bind ourselves to make to the said John S. Moon a good title to one undivided half of said real and personal property. The estate herein sold was formerly the property of Nicholas Lewis, deceased, and came to us through our father and D. P. Lewis, deceased. This sale of our property is not to interfere with our contract with George T. Thomas for the cultivation of said land, or a part thereof; but said John S. Moon is to be entitled to one-half of what may be made under our contract with said Thomas. The fulfillment of this con-

tract on our part is to be a full satisfaction to said Moon of all his claims against us jointly.   Signed by us this 10th day of December, 1868."

" J. O. & Z. R. LEWIS,

by Z. R. LEWIS."

Under this contract, the complainant was put in possession of the lands and other property, jointly with his vendors ; and they cultivated the lands during the year 1869, having one Sweeney in possession as manager and agent.    John O. Lewis having become a bankrupt soon after the date of said contract, the complainant became the purchaser of his interest in the lands and property at a sale made by the assignee in bankruptcy.    In February, 1873, Z. R. Lewis sold and conveyed to said Crowder and Newman, in consideration of $2,500 by them paid, all of his interest in said land and property; and Newman sold and transferred his interest to Crowder pending this suit.    The bill sought, also, a partition of the lands, the complainant claiming a three-fourths interest, and an account of the rents and profits and sales of personal property ; and the said George T. Thomas, mentioned in the contract sought to be enforced, was made a defendant, as being interested in the account, together with the assignee in bankruptcy of said John O. Lewis.

An answer to the bill was filed by Z. R. Lewis, in which he denied the execution and validity of the contract sought to be enforced ; alleging that, if he signed it (which he denied), it was procured by false representations on the part of said Moon as to its contents, and when he was incapacitated by drunkenness from understanding its provisions.    A similar answer was filed by Crowder and Newman ; and they asked that their answer might be taken as a cross-bill, seeking to charge said Moon with the rents and profits of the property which he had received, over and above his interest acquired by the purchase at the bankrupt sale.    In reply to the defenses and claims set up in the answers and cross-bill, the complainant relied on a decree rendered in a suit in Virginia growing out of the same matters, which he pleaded as *res adjudicata*.    The material facts relating to this suit are stated in the opinion of the court.

On final hearing, on pleadings and proof, the chancellor. rendered the following decree : "It is ordered, adjudged, and decreed by the court, that the plea of *res adjudicata*, interposed by said Moon to the cross-bill of Crowder and Newman, be, and the same is hereby sustained.    It further appearing to the satisfaction of the court that the written agreement referred to in the pleadings, bearing date December 10th, 1868, was duly executed by said Z. R. Lewis, but the proof and proceedings failing to show that said agreement should be specifically enforced ; and it further appearing that said John S. Moon, by

6

[Moon's Adm'r v. Crowder.]

purchase at bankrupt sale, is the owner of John O. Lewis' interest in the lands in the pleadings described as the old Nich. Lewis plantation, situated in Morgan and Madison counties, together with the personal property thereon situated at the time of his said purchase, and that Crowder and Newman are the owners of the interest of Z. R. Lewis in said property; and it further appearing that said Crowder, since the commencement of this suit, has purchased said Newman's interest therein; it is now therefore ordered, adjudged, and decreed by the court, that the lands in the pleadings described be, and the same are hereby declared to be, held as tenants in common between said complainant and said Crowder equally, as tenants in common, and that the same should be divided between them into lots equal in value." The decree then appointed commissioners to make the partition, and proceeded thus: "It is further ordered, that it be referred to the register to ascertain—1st, how much of the personal property on said plantation on the 1st January, 1870, was used, consumed or sold by the said John S. Moon, or the said Crowder and Newman, and when so used, sold or consumed, and calculate interest on said amounts to the first day of the next term of this court; 2d, how much was the rental value of said lands for the years 1869, 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877, 1878, and 1879, deducting from each year's rent the value of all permanent improvements erected each year, calculating interest on each year's rent, less said deductions; 3d, how much was paid out by the said Moon, or by the said Crowder and Newman, upon the indebtedness of the said Z. R. and J. O. Lewis; to whom paid, and when paid; and whether either of said parties paid out any attorney's fees, in and about litigation against said Z. R. and J. O. Lewis, and, if so, to whom paid, how much, and when; calculating interest thereon from the time of said payments to the first day of the next term of this court," &c.

The complainant having died pending the suit, the cause was revived in the name of Samuel H. Moore, as his administrator; and the appeal is sued out by said administrator, who here assigns as error the refusal to decree a specific performance of the contract as prayed, the final decree as rendered, and the overruling of demurrers to the cross-bill of Crowder and Newman.

D. P. LEWIS, and D. D. SHELBY, for appellant.—(1.) The matters set up by Z. R. Lewis, Crowder and Newman, against the rights asserted by the complainant's bill, deny the execution, consideration, and validity of the contract sought to be enforced; and these identical matters were set up, and relied on as grounds of relief, in the former suit between the parties in

[Moon's Adm'r v. Crowder.]

Virginia. As to these matters, the decree rendered in that suit is conclusive.—*Pettus v. Tankersly*, 61 Ala. 354; *McDonald v. Mobile Life Insurance Co.*, 65 Ala. 358; 1 Greenl. Ev. § 528. By express constitutional provision, the same effect must be accorded to this decree in the courts of Alabama as in the courts of Virginia.—Const. U. S., art. IV, sec. 1; 2 Story on Const. § 1309. The conclusiveness of such a decree, in the courts of Virginia, is shown by the case of *Taylor v. Yarborough*, 13 Grattan, 183. The terms of the decree preclude the idea of a voluntary dismissal of the bill by the plaintiff, even if he then had the right to dismiss it, which is denied; and show that, while the plaintiff moved for a decree, the court decided the case on its merits—on the pleadings and proof. *Borrowscale v. Tuttle*, 5 Allen, Mass. 377; Bigelow on Estoppel, 110, 122–3; *Hill & Braxton v. Sutherland*, 1 Wash. Va. 128; *Barker v. Cleveland*, 19 Mich. 230. The chancellor allowed the plea of *res adjudicata*, and yet refused to grant relief as to the matters thus conclusively established; and therein, it is insisted, he erred, to the prejudice of the complainant.

(2.) But, aside from this plea, and independently of it, on the other evidence shown by the record, the complainant was entitled to a specific performance of the contract as prayed. On all the grounds on which the validity of the contract was assailed, the burden of proof was on the defendants who asserted its invalidity; while the preponderance of the evidence, as to each of these disputed questions of fact, is against them. The genuineness of the signature of Z. R. Lewis is proved by a large number of witnesses, business men who were familiar with his handwriting; and is only denied by himself in some (not all) of his sworn statements, and by members of his family. As to his condition, mental and physical, when he signed the contract, the testimony of himself and the complainant, who were alone present at its execution, is repugnant and irreconcilable; his testimony being negative in its character, and its credibility seriously impaired by the numerous inconsistencies found in his several statements at different times, while that of the complainant is positive and distinct, consistent in its details, and unimpeached by other witnesses. The consideration of the contract is abundantly proved; and though the testimony of Z. R. Lewis, in one or more of his depositions, impeaches it as to the value of the services performed by the complainant, there is no effort to sustain his testimony by that of John O. Lewis, whose deposition was taken by the defendants.

HUMES & GORDON, with L. P. WALKER, *contra.*—(1.) If

there be any inconsistency or repugnancy in the chancellor's decree, as urged by appellant, it would avail him nothing, unless the decree itself is shown to be wrong; since a correct judgment or decree will not be reversed, although it may be founded on a wrong reason.— *Wilkinson v. Bradley, Wilson & Co.*, 54 Ala. 677; *Mitchell v. Pitts & Henry*, 61 Ala. 219; *Telegraph Co. v. Meyer*, 61 Ala. 159; *Gassenheimer v. Huguley*, 64 Ala. 83; *Nicholson v. Moog & Co.*, 65 Ala. 471.

(2.) The decree rendered in the Virginia suit was not conclusive as to the matters here litigated. It was not, and does not purport to be, a determination of the merits of the controversy, but is a mere voluntary dismissal, the equivalent of a voluntary non-suit at law, and does not bar another suit.—Dan. Ch. Pr., 4th Amer. ed., 811, 659, 790, 796, note 5; *McBroom v. Somerville*, 2 Stew. 515; *Porter v. Kingsbury*, 77 N. Y. 164; *Watson v. Cowdrey*, 23 Hun, N. Y. 169; *Cummins v. Bennett*, 8 Paige, 79; *Thomas v. Thomas*, 3 Litt. 9; *Bassard v. Lester*, 2 McCord's Ch. 421; *Smith v. Smith*, 2 Blackf. 232; *Simpson v. Brewster*, 9 Paige, 245; *Elderkin v. Fitch*, 2 Carter, Ind. 90; *Walker v. Carroll*, 65 Ala. 62; 1 Bland's Ch. 206, 17 Amer. Dec. 277–87. The reason for the dismissal of that suit may be found in the prayer of the bill in this case, which asked that the defendants here might be enjoined from prosecuting their rights in any other court, and be compelled to litigate all the matters in controversy with the complainant in this suit; and the complainant can not now be heard to set up, as a bar and estoppel, a voluntary compliance with the prayer of his own bill. That decree of dismissal was rendered after the institution of this suit, and, for that reason, can not be pleaded in bar of it.—*State v. Spikes*, 33 Ark. 801; 5 Sawyer, C. C. 312; *Rollins v. Henry*, 84 N. C. 269; 73 Ill. 415.

(3.) On the merits of the case, the complainant was not entitled to a decree for the specific performance of the alleged contract, because he failed to prove, as the rule requires, that the contract, if actually signed, was fair, just, and reasonable in all its parts, and was supported by an adequate consideration. *Goodlett v. Hansell*, 66 Ala. 131, and authorities there cited. The execution of the contract, or the signature of Z. R. Lewis, is denied by said Lewis, and is not satisfactorily proved; while the consideration, as proved by the complainant himself and other witnesses, taken in connection with the relation existing between the parties, and the condition of said Lewis at the time, presents a case in which the court might actively interfere to set aside the contract.—*Hale v. Brown*, 11 Ala. 87; *Holland v. Barnes*, 53 Ala. 83; *Foster v. Johnson*, 70 Ala. 249; *Davis v. Snider*, 70 Ala. 315. If the evidence as to any of these issues only leaves the fact in doubt, or does not clearly show

that the chancellor's decision is wrong, the decree must be affirmed.—*Marlowe v. Benagh*, 52 Ala. 113; *Rather v. Young*, 56 Ala. 94; *Derrick v. Brown*, 66 Ala. 162.

STONE, J.—The present suit was instituted, in January, 1874, by John S. Moon; and its prayer and purpose are, to obtain specific performance of an alleged contract of sale, bearing date December 10th, 1868. The agreement which the bill seeks to have performed, purports to have been signed and executed in the names of "J. O. & Z. R. Lewis, by Z. R. Lewis," and, on a valuable consideration recited, binds the obligors to convey to Moon an undivided half interest in a large tract of land, and personal property thereon. The property mentioned in the agreement had been owned by J. O. & Z. R. Lewis as equal tenants in common, and had been worked by them as a plantation, in partnership. John O. Lewis, very soon after the date of said agreement—December 10th, 1868—became a voluntary bankrupt; and his interest in said plantation and personal property was sold by the assignee, under an order of the court in bankruptcy, and John S. Moon became the purchaser; the sale was confirmed, and a deed made to him by the assigneee. The pleadings and evidence in the present record do not deny or question John S. Moon's right to John O. Lewis's interest—an undivided half—in said real and personal property. His purchase at the bankrupt sale gave him that interest, even if the alleged agreement of December 10th, 1868, be inoperative. Hence, this suit raises no question as to that half interest. John O. Lewis, Z. R. Lewis, and John S. Moon were all residents of the State of Virginia, while the property in controversy in this suit is in Morgan and Madison counties in the State of Alabama. Moon was a practicing attorney-at-law; and the recited and alleged consideration for the contract of sale of December 10th, 1868, is professional services theretofore rendered by him for the brothers Lewis. Pending this suit, Moon has died, and Samuel H. Moore is his personal representative.

In 1871, Z. R. Lewis filed a bill against Moon, in the State of Virginia, to have the alleged contract of December 10th, 1868, set aside and cancelled. The particular ground on which the bill prayed to have that contract vacated was, as averred in that bill, that Moon had obtained the signature of Z. R. Lewis to it, when the latter was so drunk as to be unconscious of what he was doing, and by falsely stating to him that the paper did not bind or affect him, Z. R. Lewis, but only affected, and was intended to benefit, John O. Lewis. There was a broad and emphatic issue on these averments. No testimony appears to have been taken in that cause, but it remained in court undecided, until after this bill was filed.

In 1873, while said suit was pending in Virginia, Z. R. Lewis sold and conveyed his interest in the lands and personal property in controversy, to Crowder and Newman, residents of Huntsville, Alabama; and thenceforth they claimed and took control of said interest of Z. R. Lewis, claiming it was one undivided half of all of said property. That claim, the manner of its assertion, and certain antagonisms and unfriendly relations which sprang up between them and Moon, gave rise to this suit. Newman sold his interest to Crowder, and the latter now claims all of Z. R. Lewis's interest.

The Virginia suit was finally disposed of, June 30th, 1874. The language of the decree is: "This cause came on this day to be again heard, on the papers formerly read, and the answer of John S. Moon, with the exhibits filed with said answer, and with general replication to said answer, and upon the report of master commissioner, Wm. M. Perkins, made in pursuance of the decretal order of the October term, 1872, and was argued by counsel. On consideration whereof, and on motion of the plaintiff, the court doth adjudge, order and decree, that the bill of plaintiff be dismissed, and that he do pay to the defendant his costs in this behalf expended. But the defendant, J. S. Moon, is not to be barred or precluded by this decree from asserting or recovering, in any proper suit, any balance which may be found due him by the plaintiff, as set out and asserted in the answer of John S. Moon, growing out of the accounts asked for in his said bill."

A question, which meets us at the threshold of this case, may be thus stated. The *gravamen* of the Virginia suit, instituted by Z. R. Lewis, was, that the alleged contract of December 10th, 1868, was improperly or fraudulenty obtained by Moon. That suit was pending, and at issue, when Crowder & Newman purchased Z. R. Lewis's interest. Moon, through his agent, Sweeney, was then in possession of the lands in controversy—not the exclusive possession, but in possession, claiming a three-fourths interest, and conceding to Z. R. Lewis only the remaining one-fourth interest. The pendency of the suit, and the possession, were each constructive notice to Crowder & Newman of Moon's claim. But, in addition to this, they had actual notice of it.

We have seen above, that Z. R. Lewis's bill was dismissed at his costs. The object of the present bill, as we have seen, is to obtain specific performance of the said contract of December 10th, 1868; and if the relief prayed for be granted, Moon will be the owner of three-fourths, and Crowder of one-fourth of the tract. In answer to this suit, the defendants again set up the invalidity of the said contract of December 10th, 1868. The defense goes further than Z. R. Lewis's bill, and denies

[Moon's Adm'r v. Crowder.]

that Lewis ever signed the contract, and pleads *non est factum* to it, in bar of the recovery sought by the bill. To this defense Moon replies, setting up the decree dismissing Z. R. Lewis's bill, as a former recovery, conclusively settling and decreeing the validity of said contract. It is replied to this, in argument, that the dismissal of that bill was on the motion of Z. R. Lewis, the plaintiff therein, without a trial on the merits, and consequently the doctrine of *res judicata* does not apply. The chancellor sustained the defense of former recovery, and held that the decree rendered in the former suit is a bar to all further inquiry into the validity of the contract of December 10th, 1868.

There can be no question, that if Z. R. Lewis is concluded by that decree, Crowder is alike concluded. He stands in the relation of privy in estate to Z. R. Lewis, with notice, both constructive and actual, that that suit was pending, and of the object for which it was instituted. If he desired to avoid its effect, he should have taken control of its prosecution.

The decree dismissing the Virginia suit is not in the form usually employed, when a complainant desires to abandon the further prosecution of his suit. Such order of dismission generally makes no reference to pleadings or evidence, argument of counsel, or submission of the cause. There is, in fact, no submission—nothing on which the judgment of the court is invoked. Enough, in such case, that the record show that the complainant came and dismissed his cause, and the decree of the court thereon. No judgment, in such case, is pronounced on pleadings or evidence. It is very like a dismission, or voluntary non-suit at law, which does not bar a second suit. The decree in the cause we are considering recites, that there was a hearing "on the papers, formerly read, and the answer of John S. Moon, with the exhibits filed with said answer, and with general replication to said answer, and upon the report of the master commissioner, Wm. M. Perkins, made in pursuance of the decretal order of the October term, 1872, and was argued by counsel." All these are very appropriate words, when there is a submission for a decree on a real issue. They are very inappropriate, when complainant simply has his bill dismissed on his own motion. The decree then proceeds; "On consideration whereof, and on motion of the plaintiff, the court doth adjudge, order and decree, that the bill of plaintiff be dismissed," &c. Now, it is our duty, in construing writings, to give some meaning to each clause and word, if we can. We have no authority for rejecting, as useless and meaningless, all the recited words of submission, copied above, and the additional words, "on consideration whereof." Why consider the papers formerly read, the answer of John S. Moon, with its exhibits, the general replication to the answer, and the report of the master

commissioner, if plaintiff moved to dismiss his own cause? Almost all orders of court are made on the motion of some party to the proceedings. Courts rarely act *ex mero motu.* Is it not more rational to conclude, that the words, "on motion of the plaintiff," were inserted to show that plaintiff was the party who moved for decree in the cause, and not that he moved for decree of dismissal. This gives operation to all the words, and relieves the court of all imputation of listening to the arguments of counsel, and considering the merits of the controversy, on a motion by plaintiff to dismiss his own cause out of court. We deem it unnecessary, however, to decide this question.

The chancellor, after sustaining Moon's plea of former recovery, went farther, and announced that it appeared, to his satisfaction, that the said agreement of December 10th, 1868, was duly executed by Z. R. Lewis. The testimony in this record, bearing on the question of execution *vel non* of said agreement, is very voluminous; we may add, in some cases unusually prolix. There were many objections filed to interrogatories and the answers thereto; and, in our opinion, many of those objections were well filed. Other portions of the testimony, clearly illegal, do not appear to have been objected to. In this State, we do not permit extraneous papers to be presented before the jury or court, or shown to a witness, that he may institute a comparison between such paper, though admitted to be genuine, and the one in controversy.—*Bestor v. Roberts,* 58 Ala. 331; *Kirksey v. Kirksey,* 41 Ala. 626.

The competency of persons to give their opinions, as to whether a given signature is in the proper handwriting of the person it purports to have been made by, is not confined to experts. Any witness who has seen the party write, or who knows his handwriting, may express his opinion, as to the genuineness of the signature. Of course, the extent of his familiarity with the handwriting, will enter into the weight of his testimony. Whar. Ev. §§ 707–8; 1 Greenl. Ev. §§ 596–7; 1 Brick. Dig. §§ 1078, *et seq.* Experts may go farther; but then, to legalize such testimony, the witness must be first shown to be an expert; that is, accustomed to, and skilled in the matter of handwritings, genuine and spurious. These may institute comparisons between writings of unquestioned genuineness, and the writing in dispute, and may give their opinion whether both were written by one and the same person. They may, also, give their opinion whether a given writing is a genuine, or a feigned or forged signature. There are certain other matters pertaining to handwriting, about which they can give their skilled opinions, not necessary to be here considered.—1 Whar. Ev. § 718; 1 Greenl. Ev. § 440; *Tullis v. Kidd,* 12 Ala. 648; *Blackman v. Collier,* 65 Ala. 311; *Young v. O'Neal,* 57 Ala. 566.

[Moon's Adm'r v. Crowder.]

Each of the parties to this suit has, in some cases, introduced extrinsic writings, for comparison, without objection; and, to that extent, such testimony was properly regarded by the chancellor. Parties may try their controversies on illegal evidence, if they choose to do so.

There is a great deal of illegal evidence, offered to sustain the credibility of witnesses, whose testimony has not been impeached. *Baucum v. George*, 65 Ala. 259. And there is a good deal of hearsay evidence. All this should have been disregarded.

It is a rule in this court, if a chancellor has announced a finding on testimony, we will not reverse his finding, unless clearly convinced he erred.—*Rather v. Young*, 56 Ala. 94; *Bryan v. Hendrix*, 57 Ala. 387; *Smith v. Inman*, 70 Ala. 108; *Derrick v. Brown*, 66 Ala. 162. But there are stronger reasons than usual, why this rule should be observed in this case. The chancellor had before him, not only the original contract, upon the genuineness of which he was required to pronounce, but he had many other admitted signatures of Z. R. Lewis, which appear to have been put in evidence without objection. The advantage he derived from an inspection of those signatures, is denied to us. We feel bound to affirm the decree of the chancellor on this, the main disputed question of fact, and would feel inclined to find as he did, if the question stood unaffected by his finding.

In the final decree in this cause, the chancellor, after ascertaining that the contract sued on was the contract of Z. R. Lewis, went farther, and announced that the proof and proceedings failed to show that such agreement should be specifically enforced.

It is not every contract parties enter into, that chancery will specifically enforce. Nor does it necessarily follow that, because the Chancery Court refuses to set aside an executory contract at the suit of one of the parties, it will compel its specific execution at the suit of the other. There is a wide margin of discretion, which separates the principles of relief in the two cases. In fact, it is always within the enlightened discretion of the chancellor, whether he will decree specific performance in any case; not an arbitrary or capricious discretion, dependent on the whims or caprice of the chancellor, but a discretion reduced to rules, and clearly defined. To call the powers of the Chancery Court into exercise in such a case, it is not always enough that the contract is legally binding. It must be fair, just, and reasonable in all its parts. This is what is meant by the phrase, 'judicial discretion,' in such cases. "A valuable consideration, particularity, certainty, mutuality, and a necessity for performance, are requisites upon which the equity of a case arises."—Whar. on Spec. Perf. § 6; 5 Wait's Ac. & Def. 764–5; Sto. Eq. Jur. §§ 741–2; *Gould v. Womack*, 2 Ala. 83;

*Casey v. Holmes*, 10 Ala. 776; *Goodlett v. Hansell*, 66 Ala. 151. So, the plea of former recovery—*res judicata*—if fully made good, is not conclusive of Moon's right to specific performance.

As we have said, the testimony in this cause is very voluminous, and much of it is illegal. It leaves the parties most directly interested in the issue subject to criticism, if not to animadversion. Crowder and Newman purchased from Lewis, when they knew Moon asserted a right to half the interest they were buying, and when they knew a suit was pending to test the validity of that claim. This savors of maintenance. They purchased at a very low figure; and Mr. Crowder has employed methods, at least questionable, in getting up testimony in the cause. Z. R. Lewis is three times examined. He casts some distrust over his testimony, by showing that his answers were written out anterior to his appearance before the commissioner, and that, in giving his answers, he read from his manuscript. Some of his answers in the second deposition indicate that his mind was not in proper poise when they were given. Moon testifies, that he proposed to Crowder, as the agent of Z. R. Lewis, to pay three thousand dollars for the latter's interest in the property. This was before Crowder purchased the same interest for the lesser sum of twenty-five hundred dollars. Crowder does not deny that Moon made such offer, but testifies to a confident recollection that he informed Lewis of this offer before the latter sold to him and Newman. Yet he fails to prove this fact by Lewis, although he had his deposition taken three times. But this case is not to be determined on the weakness of Crowder's claim.

Moon's testimony stands almost unsupported, in the matter of the value of his services, which he testifies constituted the consideration of the contract of December 10th, 1868. G. C. Gilmer gives him the best support as to value, but G. C. Gilmer was not an attorney at law. The alleged consideration was, that through Moon's exertions and influence, D. P. Lewis was induced to execute a codicil to h's will, by which he released the brothers John O. and Z. R. Lewis from the payment of all interest on a bond they had given for a half interest in the lands in controversy, and a large amount of personal property. As we understand the testimony, D. P. Lewis, and his attorney in fact, G. C. Gilmer, at that time claimed of J. O. and Z. R. Lewis twenty thousand dollars of interest, and only twenty thousand, although much more was due. The codicil, drawn by the attorney of Mr. Gilmer, was executed, and the Lewis brothers released. Mr. Moon's description of the services he rendered is in substance as follows: G. C. Gilmer was largely a beneficiary under the will and a deed which had been executed by D. P. Lewis. Lewis was an old and infirm man, had never been

married, and had great confidence in Gilmer, with whom he lived. Moon caused the report to be started and circulated, that the will and deed of D. P. Lewis, which so benefited G. C. Gilmer, would or could be assailed and set aside, for want of capacity in D. P. Lewis to make them; that the threat to assail the deed was brought to the knowledge of Gilmer and his counsel; that Moon and Gilmer's counsel had an interview and an understanding, which resulted in the execution of the codicil. Moon was present, with the Lewis brothers, and as their counsel, when the codicil was executed. D. P. Lewis died soon afterwards; his will and codicil were probated and established, and the Lewis brothers released from the payment of all interest on the bond. They were not liable for the principal of the bond, under its express terms, and under the will of Nich. Lewis, through which they all claimed title. This is, substantially, Mr. Moon's statement of the services he rendered, which he says constituted the consideration for the contract of December 10th, 1868. True, he places the sum, from which he alleges he procured their release, at a higher figure, and says that, computing his compensation at 10 per cent. of the sum he saved them, it should have been larger. He also mentions other services performed for them—counsel in other matters—but fixes no price upon them. These services he says he agreed to surrender, in the settlement of December 10th, 1868, and accepted the contract of that date, in full discharge of all claim against the two brothers. As part reason for taking this course, he testifies that J. O. Lewis was then hopelessly insolvent, and about to go into bankruptcy; and that the financial condition of Z. R. Lewis was precarious. He "took counsel of his fears," and accepted the payment secured by the contract of December 10th, 1868, in full satisfaction.

It is difficult to estimate the value of the services herein above set forth. Aside from the questionable methods by which he says he obtained their discharge from liability, we are at a loss to assign to the services their proper standing in judicial lore. Skilled knowledge commands higher wages, by reason of the long, weary days and nights—the *viginti annorum lucubrationes*—consumed in its acquisition. Subjected to this test, we are still without a standard for its valuation. Such services can not certainly be assigned a place in the higher fields of attorneyship, and we doubt if they should be measured by a scale of per-centage. Aside from all this, the testimony on the question of consideration is neither harmonious nor satisfactory. Z. R. Lewis testifies that, if he signed the contract, he did it without reading it, and upon a false statement by Moon of its contents. Both he and John O. Lewis testify that, when they were returning home after the execution of the codicil, Moon in-

[Hayes v. Woods.]

formed them that his charge was one thousand dollars.  Z. R. Lewis testifies he paid this sum, in 1869.  Moon testifies the thousand dollars was paid for his services afterwards rendered in resisting the contest of D. P. Lewis' will.

Another circumstance weighs upon our deliberations.  Mr. Moon was adviser and chief director, though not the penman, in preparing J. O. Lewis' petition and schedules, when the latter made his surrender in bankruptcy.  This was very soon after the contract of December 10th, 1868, was executed.  No mention was made in the schedules of the agreement of sale to Moon, but the bankrupt's right was put down as a half interest, subject to liens.

The testimony does not make it clear there was an adequate consideration for the contract, and fails to show it was fair and just in all its parts.

The decree of the chancellor is affirmed.