# King *v.* The State.

### Larceny.

(Decided June 30, 1916.   72 South. 552.)

1. **Larceny; Intent After Taking.**—One who acquires property tortiously, and thereafter forms the intent to convert it, may be guilty of larceny.

2. **Same; Conversion by Bailee.**—One who has the bare custody of property over which the owner exercises dominion or control, may be guilty of larceny upon forming the intent to deprive the owner thereof.

3. **Same.**—One who takes possession of trespassing cattle under authority of Acts 1896-7, p. 434, is not guilty of larceny, unless at that time he intended to deprive the owner thereof.

4. **Charge of Court; Part of Evidence.**—A charge asserting that if you believe from any part of the evidence in this case, after considering all the evidence in the case, etc., was properly refused as authorizing the jury to base their verdict upon a part of the evidence.

5. **Larceny; Intent.**—An intent to convert stolen property to one's own use is not an essential element of larceny, for an intent to deprive the owner thereof is sufficient.

6. **Evidence; Hearsay.**—Evidence as to whether the complaining witness secured information as to the location of the stolen property, was hearsay, and not admissible.

7. **Same; Res Inter Alios Acta.**—Evidence as to what steps witness took to recover the stolen property was res inter alios acta, and not admissible.

8. **Same; Handwriting; Comparison.**—Prior to Acts 1915, p. 134, a disputed writing could not be proven by permitting a witness or the jury to compare it with the genuine writing not in evidence.

9. **Same.**—Acts 1915, p. 134, does not authorize the submission of the disputed writing and genuine writing not in evidence, to the jury without the comparson required by the statute.

APPEAL from Monroe Law and Equity Court.

Heard before Hon. W. G. McCORVEY.

James King was convicted of larceny, and appeals. Reversed and remanded.

The facts sufficiently appear. The oral charge of the court excepted to is as follows:

"The state, in answer to that part of defendant's contention, says that, although he may have taken the property, that ox, and may have attempted to give the notices as required by the stock law, and sold it, or attempted to sell it, he committed larceny, in that the felonious intent arose after he had gotten possession

of it.   In other words, the state says, contends, that this man when he was questioned about the lost yearling, refused to tell anything that he knew about it.   Well, gentlemen, I charge you that larceny may be committed that way.   One may come into the possession of property by taking it up, and afterwards the felonious intent could come into his mind, and if he attempted to sell it, then, in that event, for the purpose of converting it or the proceeds of it, to his own use, in that event the crime would be established."

After giving charge X, the court of its own motion said:

"I want to explain this charge.   Notice the reading of it [the court then reread the charge].   Now I have just charged you that that felonious intent might come—felonious intent to appropriate the property to his own use—in other words I might go out there and take property under a bona fide belief that it is my property, but when I went to convert it to my own use, when I undertake to sell it, then the felonious intent must be there."

The same explanation as to charge Y was given by the court.

The following are the charges refused to the defendant:

"(A) To constitute the offense of larceny there must be a trespass in the original taking.   One who acquires possession bona fide cannot thereafter commit larceny of the thing so possessed.

"(B) If the animal in question came rightfully into the possession of the defendant, you cannot find him guilty of larceny, even though you believe that he later disposed of it wrongfully.

"(B1) There must be a felonious taking and carrying away to constitute larceny; and, if you find from the evidence that the cow in this case was taken up while running at large, the defendant cannot be convicted of larceny if he afterwards formed the intent to appropriate the property to his own use."

"(D) A necessary element of larceny is a wrongful taking of the personal property of another with intent to steal it.   And unless you believe from the evidence beyond a reasonable doubt that the defendant wrongfully took up the animal in question, at the time intending to steal it, you should find him not guilty.

"(E) If the animal in question came rightfully into the possession of the defendant and no trespass was committed in the taking of the animal you should find the defendant not guilty."

"(8) I charge you that before you can convict the defendant of larceny you must first believe from the evidence beyond a

[King v. The State.]

reasonable doubt that at the time the defendant took possession of the animal said to have been stolen he intended to convert it to his own use.

"(9) If you believe from any part of the evidence in this case, after considering all the evidence in the case, that at the time the defendant took possession of the animal in question he was complying, or attempting to comply, with the stock law, you cannot find him guilty of larceny, even though in fact he did not comply with the stock law in every respect."

"(11) I charge you that larceny is the stealing of personal property, and if you find from any part of the evidence in this case, after considering all the evidence, that at the time the defendant took possession of the animal in question he did not intend to convert it to his own use, you should acquit him.

"(12) I charge you that if you believe from the evidence in this case that at the time the defendant took possession of the animal in question he was complying, or attempting to comply, with the law, he could not be guilty of larceny even though he did not in fact comply with the law in every respect."

HARE & JONES, and C. L. HYBART, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

BROWN, J.—The question of controlling importance is: Can one who distrains cattle damage feasant be convicted of larceny on showing an intent to convert the property and deprive the owner of the use after it comes into his possession?

"At common law, where cattle trespassed upon the lands of another, the landowner was permitted to distrain the cattle thus damage feasant till their owner should make him satisfaction."— 2 Cyc. 400 (e) ; *Richardson v. Carr,* 1 Har. (Del.) 142, 25 Am. Dec. 65; *Bonner v. DeLoach,* 78 Ga. 50, 2 S. E. 546; 3 Blackstone's Comm. 211.

And under the statute in force in Monroe county, the defendant, if the animal was at large in a district where stock was prohibited from running at large, had the right to take it up and hold it until the proper statutory notice could be given, unless the owner intervened and claimed it and paid the fees allowed by the statute, and after giving such notice, if no claim was made, to sell the animal at public auction.—Acts 1896-97, pp. 435-35.

(1, 2) It is a familiar rule that when one acquires the possession of property tortiously, and afterwards conceives and executes the purpose to convert it, he may be guilty of larceny.— *Weaver v. State,* 77 Ala. 26; *Dozier v. State,* 130 Ala. 57, 30 South. 396. Also that where one has the bare charge or custody of property of another, the property being under the dominion and control of the owner, the party having the bare custody may be guilty of larceny if he converts it to his own use with the purpose of depriving the owner of it.—*Boswell v. State,* 1 Ala. App. 182, 56 South. 21; *Holbrook v. State,* 107 Ala. 154, 18 South. 109, 54 Am. St. Rep. 65.

(3) However, if, as contended by the defendant, the animal, the subject of the alleged larceny, was trespassing on his growing crops and he took it into his possession under the local acts, the principles above stated have no application. Where the party charged assumes dominion over the property and takes it into his possession by prima facie lawful authority, before he would be guilty of larceny, the felonious intent must exist at the time dominion over the property is assumed, thus making the use of the supposed lawful authority a mere cloak to cover up the criminal purpose, and constituting a fraud on the law.—*Commonwealth v. Mason,* 105 Mass. 163, 7 Am. Rep. 507, and cases cited in note page 510.

In view of the evidence in the case showing without dispute that the animal in question was taken up by the defendant while at large in a stock law district, and trespassing upon his growing crops, the oral charge of the court to which exception was reserved and the explanation accompanying the special charges given at defendant's instance are in conflict with the principles above stated, and constitute reversible error.

The question as to whether the criminal intent existed at the time of the taking was, under the evidence, for the jury, and the affirmative charge was properly refused.

Charges A, B, B1, D, E, and 12 ignore the question of the existence of a felonious intent at the time the defendant assumed dominion over the property and were well refused.

(4) Charges 9 and 11 authorize the jury to base their verdict on part of the evidence, and were properly refused.

(5) It is not essential that the thief should entertain the intent to convert the property to his own use; it is enough that the intent be to deprive the owner of the property.—*Higgs v.*

*State,* 113 Ala. 36, 21 South. 353; *Fort v. State,* 82 Ala. 50, 2 South. 477. On this principle, charge 8 was properly refused.

(6, 7) The question to the witness Northrop: "Did you get any information about where your yearling was, and, if so, what steps did you take to recover it?" clearly called for hearsay testimony, and the objection should have been sustained. And the question eliciting testimony as to what steps he took to recover the property called for matter res inter alios acta, and the objection should have been sustained.

(8, 9) The act approved March 6, 1915, provides "that comparison of a disputed writing with any writing admitted to be genuine or proven to the reasonable satisfaction of the court to be genuine shall in civil and criminal cases be permitted to be made by witnesses who are qualified as experts or being familiar with the handwriting of the person whose handwriting is in question and such writings and the evidence of witnesses respecting the same may be submitted to the court or jury trying the case as evidence of the genuineness or otherwise of the writings in dispute."—Laws 1915, p. 134.

Under what is known as "the old English rule" obtaining in this state before the enactment of this statute, it was not permissible to prove a disputed handwriting by comparison—that is, by placing a writing not in evidence in the case in juxtaposition with the one in dispute for the purpose of allowing a witness or the jury to inspect the two in determining whether or not they were written by the same person.—*Moon v. Crowder,* 72 Ala. 79; *Snider v. Burks,* 84 Ala. 53, 4 South. 225; *Curtis v. State,* 118 Ala. 131, 24 South. 111; *Hickory v. U. S.,* 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170; Jones on Evidence, § 551. This rule was modified in England by statute (St. 17 & 18 Vict. v. 125, § 27; St. 28 Vict. c. 18, § 8), providing: "Comparison of a disputed handwriting with any writing proven to the satisfaction of the judge to be genuine, is permitted to be made by witnesses; and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise. of the writing in dispute."

Our statute is a literal copy of the one last quoted, and its purpose is to modify the rule to the extent only of allowing a comparison by a competent witness—one who has qualified as an expert or shown to have such familiarity with the handwriting of the person whose handwriting is in dispute as to authorize the

[Taylor v. The State.]

witness to give an opinion thereon—and the two writings are submitted along with the testimony of the witness for the consideration of the jury. However, under the rule as modified by the statute, it is not permissible to submit the two writings without such comparison and the testimony of such witness thereon to the jury for comparison, and the objection of the defendant to this method of comparison should have been sustained.

For the errors pointed out, let the judgment be reversed.
Reversed and remanded.