## WILLIAMS v. STATE. (7 Div. 976.)

(Court of Appeals of Alabama. April 8, 1924. Rehearing Denied June 3, 1924. Affirmed on Mandate Oct. 28, 1924.)

1. **Criminal law** ⊚➡1043(2)—**Insistence that experts not qualified not considered, when specific objection not made.**

Insistence that handwriting experts were not qualified cannot be considered on appeal, where no objection on that specific ground was made during trial.

2. **Criminal law** ⊚➡491(1)—**When admitted signatures admissible for comparison in conjunction with expert testimony.**

Under Acts 1915, p. 134, admitted signatures are admissible for purpose of comparison only where both disputed and admitted signatures are before the court, and such writings are then admissible in conjunction with expert testimony.

3. **Forgery** ⊚➡8, 21—**One aiding and abetting forger with guilty knowledge is guilty of forgery.**

One who aids or abets crime of forgery with guilty knowledge is guilty of forgery and, if defendant procured one to sign his name and he did so sign it, with fraudulent intent to negotiate note as having been indorsed by another with same name, they would both be guilty.

---

**4. Forgery ⚖️21—Defendant might be guilty of forgery in procuring another to sign name, though such other acted in good faith.**

If defendant procured another to indorse note with fraudulent intent at the time to negotiate it as having been signed by third person with same name as indorser, defendant may be guilty of forgery, though indorser acted in perfect good faith.

**5. Forgery ⚖️13—Instrument once legally executed cannot be made forgery by false representation as to its contents or identity of signers thereto.**

An instrument having once been executed legally, cannot be made a forgery by false representation as to its contents, or as to identity of parties whose names are signed thereto, nor by uttering instrument on false representation as to contents or identity of signers.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Albert Williams was convicted of forgery in the second degree, and he appeals. Reversed and remanded.

Certioraries granted by Supreme Court in Ex parte State ex rel. Attorney General, 104 So. 40, and Ex parte Williams, 104 So. 44.

See, also, 19 Ala. App. 597, 99 So. 660.

W. J. Boykin, of Gadsden, C. W. Peters, of Miami, Fla., H. A. Ferrell, of Seale, and R. T. Goodwyn, of Montgomery, for appellant.

The court erred in the oral charge to the jury. Owens v. State, 16 Ala. App. 413, 78 So. 423; Harrell v. State, 79 Fla. 220, 83 So. 922; Rembert v. State, 53 Ala. 467, 25 Am. Rep. 639; Thompson v. State, 49 Ala. 16; Dixon v. State, 81 Ala. 64, 1 So. 69; Hobbs v. State, 75 Ala. 1; Beal v. State, 138 Ala. 94, 35 So. 58; 19 Cyc. 1378. It was improper to permit a comparison of signatures, neither signature being in evidence. Chisolm v. State, 204 Ala. 69, 85 So. 462; King v. State, 15 Ala. App. 67, 72 So. 554; Acts 1915, p. 124.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

To constitute guilt, it is not necessary that the defendant should have written the instrument, procuring another to do it for him may be sufficient. Koch v. State, 115 Ala. 99, 22 So. 471. The oral charge of the court should be considered as a whole. McNeal v. State, 102 Ala. 121. There was no error in admission of evidence as to comparison of signatures. Underhill on Crim. Evi. (2d Ed.) 718; 4 Michie's Ala. Dig. 173; King v. State, 8 Ala. App. 239, 62 So. 374; Karr v. State, 106 Ala. 1, 17 So. 328.

SAMFORD, J. The defendant was indebted to the First National Bank of Gadsden in the sum of $9,500, evidenced by his note, which was secured by a mortgage on certain personal property. Default having been made on this note, the bank instituted detinue proceedings for the recovery of the property, and, defendant having failed within 5 days to replevy, the bank made a plaintiff's bond, under the statute, and took possession of the property. After this the bank and defendant entered into negotiations for a release of the property to defendant, which culminated in the defendant presenting to the bank a promissory note, payable at a future date, for $9,500. This note was signed in the trade-name of defendant and by the defendant, and also purported to be indorsed by W. H. Irwin. The alleged forgery consists in the signing of the name W. H. Irwin as an indorser on the note. The original note was by the bank turned over to its attorney, who put it in his safe, from which, after the arrest of defendant and before the trial, it was stolen. Proof was made of the loss and secondary evidence was admitted as to the note, signatures, indorsement, and contents.

After proof of the formal allegation had been made, the state offered proof tending to prove the identity of W. H. Irwin as being a certain person whose home had been in Birmingham, Ala., of whom, prior to accepting the note, the bank had made inquiry regarding his financial worth and found him to be a man of means and responsible. This man (W. H. Irwin) was then examined as a witness, and testified that he had not indorsed the note nor authorized it to be done, and knew nothing about such a note until called to his attention by officers of the bank. The defendant did not pretend that the indorsement had been made by the man (whom we shall for convenience call Irwin No. 1), but claimed that the indorsement was in good faith by another man named W. H. Irwin (whom we shall call Irwin No. 2). To aid in proving this, defendant produced and examined as a witness a man who said his name was W. H. Irwin, who testified that, at the request of defendant, he had signed his name as indorser on the note, that he did it in ignorance of the fact that there was another W. H. Irwin. This witness admitted his liability as an indorser, and corroborated the defendant's testimony that the indorsement was in good faith.

[1] It therefore became a material inquiry in the case as to whether the indorsement was made by Irwin No. 2. Looking to this, Irwin No. 2 was requested by the solicitor, in the presence of the jury, to sign his name on cards, both in pencil and ink. This he did, signing the name "W. H. Irwin" several times. The state then called several witnesses to testify as experts. There is now some insistence made by appellants that some of these experts were not qualified as such. As to this, there was no objection dur-

ing the trial on that specific ground as to those witnesses not so qualified. The insistence cannot here be considered. These experts were permitted to testify, after examination of the admitted signatures of Irwin No. 2, over the general objection and exception of defendant that the signature appearing on the original note was not the same signature as those admitted to have been made by Irwin No. 2.

It is urged that, before Acts 1915, p. 134, shall apply, it must appear that both the admittedly or proven genuine, and the questionable, paper shall be before the court, and that, as the original was not in court, the testimony of the experts was inadmissible.

[2] Under the old "English rule" it was not permissible to prove a disputed handwriting by comparison or "by placing a writing not in evidence in the case in juxtaposition with the one in dispute for the purpose of allowing a witness or the jury to inspect the two in determining whether or not they were written by the same person." Moon v. Crowder, 72 Ala. 79. This rule was modified in England. St. 17 and 18 Vict. c. 125, par. 27; St. 28 Vict. c. 18, par. 8. This modified rule is now the law of this state. Acts 1915, p. 134. In order for the modified rule to be applicable, it should be made to appear that both the disputed and admitted signatures were before the court. Such writings would then be admissible in evidence in conjunction with the testimony of the expert respecting the same. King v. State, 15 Ala. App. 67, 72 So. 552.

In the instant case the disputed signature was not physically before the court, nor was the admitted signature offered in evidence. The question is therefore presented as to how an expert may qualify so as to enable him to testify as to a given disputed signature. There are two methods given: (1) "Ex visu scriptionis;" and (2) "ex scriptis olim visis." With the first of these we are not here concerned. But, the witnesses, having seen the signatures admitted to be genuine, were qualified under (2) supra to testify as to the signature in dispute. 1 Green. on Ev. par. 577, (2); Moon, Adm'r, v. Crowder, 72 Ala. 79–88. The fact that the witness testifying was not then looking at the disputed signature and had not seen it in several months does not affect its admissibility, but goes to its probative force. 1 Green. on Ev. par. 577 (1). Of course the testimony given could only be the opinion of the witness, and his answer that it "Was not the same signature" must be taken as the expression of his opinion to that effect.

The court, in its oral charge, and after charging at length upon the law of forgery as applied to the different phases of the evidence, said:

"In other words, gentlemen of the jury, if you find from the testimony in this case that this note was in fact signed by defendant's witness, W. H. Irwin, which fact was known to the defendant—that is, signed as an indorser by W. H. Irwin, the defendant's witness—and the defendant negotiated this note or transferred and delivered this note to the First National Bank of Gadsden as a note having been indorsed by W. H. Irwin, the state's witness, and as constituting a liability against W. H. Irwin, the state's witness, and that was done with the intent to defraud, and was within 3 years before the finding of this indictment, and in this county, this defendant would be guilty as charged in this indictment."

This part of the court's oral charge was directed to that phase of the testimony to the effect that Irwin No. 2 had in fact indorsed the note in his own name, so as to constitute such indorsement a legal binding obligation on him, and had turned the note over to defendant to be negotiated by defendant as such, but, instead of informing the bank specifically as to the identity of the real indorser, the defendant represented to the bank that the indorser of the note was in fact Irwin No. 1.

"Forgery is the signing by one without authority, and falsely and with intent to defraud the name of another to an instrument, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 7 Mitch. Dig. 477, p. 1; Harris v. State, 19 Ala. App. 484, 98 So. 316.

[3-5] Under our law a person who aids or abets the crime, with a guilty knowledge, would be guilty. Hence, if defendant procured Irwin No. 2 to sign the name "W. H. Irwin," and Irwin No. 2 did so sign with the fraudulent intent to negotiate the note as having been indorsed by Irwin No. 1, they would both be guilty. Barfield v. State, 29 Ga. 127, 74 Am. Dec. 49; Edwards v. State, 53 Tex. Cr. R. 50, 108 S. W. 673, 126 Am. St. Rep. 767. Or, if defendant procured Irwin No. 2 to indorse the note "W. H. Irwin," with the fraudulent intent at the time to negotiate it as having been signed by Irwin No. 1, defendant might be guilty, although Irwin No. 2 had acted in perfect good faith. Gregory v. State, 26 Ohio St. 510, 20 Am. Rep. 774. Under the state of facts last above hypothesized, Irwin No. 2 would only be the innocent agent of defendant in the signing the name of another as indorser. On the other hand, if Irwin No. 2 in fact and in good faith signed the note as indorser and not with the intent of personating Irwin No. 1, and it was so understood between him and defendant at the time and was to be negotiated as such, although it was afterwards negotiated upon the false representation that the signature was that of Irwin No. 1, it was not a forgery. An instrument having once been executed legally cannot be made a forgery by a false representation as to its contents, or as to the identity of the parties whose names are

signed thereto, nor by uttering the instrument upon false representation as to the contents or identity of the signers. 19 Cyc. pp. 1378, 1379; Hevey's Case, 2 East, P. C. 856. The first excerpt to which exception was reserved seems to have some word omitted or substituted. As written in the transcript it is confusing, and evidently contains words not actually used by the trial judge. However, the following excerpt (hereinabove quoted) qualifies and modifies and corrects the foregoing, so that this court can understand what was the real rule as stated by the trial court.

It is not seriously insisted by the Attorney General that the foregoing excerpt, standing alone, is not error. At least no authority has been furnished us to that effect, and we have been unable to find one. But it is insisted that we must consider the charge as a whole, and from that we must ascertain if the law is correctly stated. That is the law, and that is what we have done. The quotation from the court's oral charge as set out in the state's brief, and relied on by the state's counsel to be a correction of the error, does not go far enough. A full quotation from the oral charge would disclose the fact that the trial judge did not in the least recede from the statement of the law as stated by him in the above-quoted excerpt. The view taken by the trial judge was that the note as executed and indorsed may not have been a forgery at its inception, but, if afterwards the representation was made to the bank that Irwin No. 1 had indorsed it, and such representation and negotiation was done with fraudulent intent, this would constitute forgery. We take the opposite view. It would be a fraud, but not forgery.

For this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

PER CURIAM. Reversed and remanded, on authority of Ex parte Williams, 104 So. 44.