## PEOPLE v. FILKIN.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. FORGERY—DESTRUCTION OF FISH NETS—BOUNTY CERTIFICATE—SUFFICIENCY.

Laws 1898, p. 1158, c. 451, authorized the seizure, removal, and destruction of fish nets found in waters inhabited by fish, or on ice over such waters, after being taken before the town clerk and other officials in the county where seized, and provided that on affidavits that such nets were illegal, and not licensed, and were taken from water or ice, as provided, the clerk should order the destruction of the nets, and deliver to the person seizing and destroying the same a bounty certificate on the county treasurer entitling the destroyer to specified bounties, after the officer had examined the nets, and discovered that they were not rotten or worthless, in which case no certificate issued. *Held*, that a certificate issued after, but dated prior to, the repeal of such act, and signed by defendant under his prior official title as town clerk, regularly numbered, and headed, "Certificate to County Treasurer, Bounty for Nets (Chap. 451, Laws of 1898)," certifying that S. had seized and destroyed in his presence, and according to such act, the following described fish nets, etc., and that the total amount due for bounty on the same was $285, and that such nets were not rotten, or worthless for fishing purposes, was a substantial compliance with the statute, so as to be the subject of forgery, though the date of the purported destruction of the nets was not specified.

2. SAME—STATUTES—REPEAL—EFFECT.

Where a forged certificate for fish net bounty, provided for by Laws 1898, p. 1158, c. 451, purported to have been issued for illegal nets destroyed prior to the repeal of the law, the fact that the certificate was not uttered until after such repeal did not deprive the certificate of validity on its face so as to prevent the same from being the subject of forgery, since, if it had been issued for nets destroyed prior to the repeal of the act, it would have ripened into a contract liability, which could not be affected by such repeal.

3. SAME—STATUTES—CONSTRUCTION.

A certificate for fish net destruction bounty issued under Laws 1898, p. 1158, c. 451, is a certificate issued under the authority of the state, by which the payment of money is promised, and may, therefore, be the subject of forgery in the first degree, under Pen. Code, § 509, declaring that a person is guilty of forgery in the first degree who, with intent to defraud, forges a certificate or other public security issued or purporting to have been issued under the authority of the state, by which the payment of money is promised absolutely, or purporting to evidence any debt or liability, issued or purporting to have been issued by lawful authority.

4. SAME—FORGED CERTIFICATE—SIGNATURE.

Under Pen. Code, § 509, providing that a person is guilty of forgery if, with intent to defraud, he forges a certificate purporting to have been issued under authority of any officer of the state for the payment of money, etc., where an ex town clerk falsely issued a fish net destruction bounty certificate, which was dated prior to the repeal of Laws 1898, p. 1158, c. 451, authorizing such bounty, and was signed by him as an official after his term of office had expired, and was uttered after the act of 1898 was repealed, the execution and uttering of such instrument constituted forgery, though the instrument was executed over defendant's own signature, and did not purport to be the act of another.

·Williams, J., dissenting.

Appeal from Cayuga County Court.

Charles F. Filkin was convicted of forgery, and he appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John D. Teller, for appellant.
Harry T. Dayton, for the People.

HISCOCK, J. The appellant was convicted of the crime of forgery in the first degree, because, as alleged, he falsely made, forged, and counterfeited a certain certificate that one Frank Spraker, under chapter 451, p. 1158, of the Laws of 1898, had seized and destroyed certain fish nets which were being illegally used, and thereby had become entitled to a bounty of $285.

The evidence taken upon the trial very conclusively demonstrated that defendant became a party to a contemptible and outrageous scheme to swindle the state by falsely making and uttering these certificates. Except for the attack upon the character of one of its witnesses, there was no contradiction of the evidence offered by the people in proof of his guilty transactions. The only consideration, therefore, addressed to us upon this appeal is whether any such error was committed in the methods employed in his conviction as to call for a new trial. We do not think that there was any such, but that the judgment should be affirmed, and defendant allowed to suffer that just punishment for his iniquity which it measures out to him.

The legal propositions presented to us by the learned counsel for the appellant deal with the form and substance of the crime charged in the indictment, it being urged that the acts of which the appellant was found guilty did not constitute the crime of forgery in the first degree. As an introduction to the discussion of such questions, it becomes proper to review briefly some of the material facts developed by the evidence, and the statute covering the subject of bounties for the destruction of nets. Said statute provided, in substance, that certain fish nets, when found in water inhabited by fish, or on ice over such water, might be seized and removed by any person, and taken before a town clerk, amongst other officials, in the county where seized, and upon the affidavits of two persons that said net or nets were illegal or not licensed as provided by law, and that they were taken from water or from ice as aforesaid specified, such officer should order such net or nets to be destroyed by the person seizing the same, in his presence, and upon payment of his fee should "deliver to the person seizing and destroying a net or nets, as herein provided, a certificate to the county treasurer that the person named therein has seized and destroyed according to law a net or nets, as the fact may be, and that he is entitled to a bounty on the same as follows." Then follow the specified bounties for the various kinds of nets. It was further provided that before granting such certificate the official should make an examination of the nets to see that they were not rotten or worthless, in which case no certificate issued. The county treasurer to whom such certificate was directed was required to pay the amount of the bounty specified therein, and the same was subsequently payable back by the Comptroller of the State. This law was repealed February 10, 1899.

The defendant was town clerk of the town of Montezuma, in Cayuga county, for some time prior to February, 1901, at which date his term of office expired. In the fall of 1901, and subsequently, therefore, both to the repeal of the statute in question and the termination of his term of office, he made the bounty certificate in question, and for the making and issuing of which he was indicted and convicted. This certificate was dated November 3, 1898, and was signed by him with his former official title as "Town Clerk of the Town of Montezuma, County of Cayuga, N. Y." It was directed to the county treasurer of the county of Cayuga. It was regularly numbered, and headed "Certificate to County Treasurer, Bounty for Nets (Chap. 451, Laws of 1898)," and read, "I, Charles F. Filkin, being town clerk of the town of Montezuma, in the county of Cayuga, do hereby certify: That Frank Spraker has seized and destroyed in my presence and according to law (Chap. 451, Laws of 1898) the following described fish nets which were being illegally used, viz.: [Then follows a description of the nets.] That the total amount due for bounty on the above-described illegal fish nets is the sum of $285, and I do further certify that said nets were not rotten and worthless for fishing purposes. In witness whereof I have hereunto set my hand this 3rd day of November, 1898." This certificate was delivered to the Frank Spraker therein named. As a matter of fact, no nets had been destroyed as therein stated. Spraker afterwards transferred it to some other person. Defendant was to share in the plunder of the public treasury which it was expected would be effected upon this certificate. As matter of fact, when the same was presented some time thereafter, the county treasurer refused to honor it.

It appeared that while the law was in force the business of destroying fish nets, or at least of issuing purported certificates for the alleged destruction thereof, assumed large proportions in the county of Cayuga. There was paid by the treasurer of said county thereupon the sum of $35,355, part of it after the repeal of the law. About $26,000 or $27,000 of this amount was paid upon certificates signed and issued by this defendant, and of this amount $15,300 was paid after the repeal of the law. These certificates, including the one involved in this conviction, were all upon the same form, and in accordance with a sample furnished by the Comptroller of the State. We therefore, in brief, have it that this defendant, after the law providing for such bounties had been repealed, and after his term as town clerk had expired, and without the destruction in fact of any nets which at any time allowed the payment of a bounty, falsely made and delivered a purported certificate under the title of his former and expired official character, which was falsely antedated so as to bring it within the term of office and within the life of the statute in question, in effect that Spraker had destroyed nets, and become entitled to a certain bounty.

We shall now consider the various reasons assigned by the appellant why we should relieve him from his conviction and from the results which it visits upon him. These reasons may be grouped into two classes, of which the first to be considered relate to the

form and apparent legality of the certificate, it being claimed that the latter upon its face was so invalid, defective, and insufficient that it could not deceive anybody, and be the subject of a crime such as is alleged in this case. It is, in substance, urged: (1) That "this certificate was not legally valid on its face, and no forgery of it could be committed," the specific criticism in this respect being that it did not sufficiently conform to the provisions of the act in question, and did not show that anybody was entitled to a bounty on the nets destroyed, and that it did not disclose the date when the purported destruction of the nets took place. (2) That the certificate was not in fact uttered until after the law allowing bounties had been repealed; that this repeal destroyed the validity and obligation of outstanding valid certificates issued even while the law was in effect, and that, therefore, the certificate in question, although antedated, did not create even an apparent liability. We think that the certificate in question very substantially and fairly complied with the provisions of the statute, and showed that the person named therein was entitled to the bounty specified because of the acts performed by him. We think that when it stated, in the language employed, that, in accordance with the provisions of the statute, which was expressly mentioned, Spraker had destroyed certain fish nets upon which the bounty was $285, and then further stated "that the total amount due for bounty upon the above-described illegal fish nets is the sum of $285," every reasonable implication and inference was that the bounty was due to Spraker, the only person mentioned in the certificate, and the one who was stated to have destroyed the nets from the destruction of which the bounty flowed; and it was unnecessary to state as contended more specifically that the bounty was due to Spraker. Neither do we think that the certificate was materially defective in not stating more exactly the date of the purported destruction of the nets. By its language and by its reference to the statute it certified in effect, in substance, that the alleged destruction of the nets took place under the law while it was in force, and before the certificate was issued. It would not be violent to construe the entire language used as indicating that the nets were destroyed at the date when the certificate was made and issued, and we think no more was required in this respect than was stated.

The argument that the obligation of a valid certificate issued while the law allowing bounties was in effect would have been destroyed by the repeal of the law, and that, therefore, this certificate, uttered after the law was repealed, could not deceive anybody into believing it to be a legal obligation, does not seem well founded. The statute in question allowed bounties as a consideration and compensation for services to be performed in destroying illegal nets. The law expressly provided, in substance, that said bounties were to be in lieu of all charges and expenses incurred in such destruction. It made a promise of compensation for services, which, when the latter were performed, ripened into a contract liability; and it is too well settled to require citation of authorities that such a liability, when accrued and perfected, cannot be destroyed by the repeal of the act under which it arose.

We finally pass to the discussion of the second class of objections urged by the learned counsel to the judgment, and which present the proposition that the acts committed by defendant did not constitute the crime of forgery in the first degree under section 509 of the Penal Code. The first contention is to the effect that the language of said section does not cover or include a certificate such as defendant made and uttered. This section provides that:

"A person is guilty of forgery in the first degree who with intent to defraud, forges: (1) * * * (2) * * * (3) A certificate, bond, paper, writing, or other public security, issued or purporting to have been issued by or under the authority of this state, * * * or by any officer thereof in his official capacity, by which the payment of money is promised absolutely, or upon a contingency, or the receipt of any money or property is acknowledged, or being or purporting to be evidence of any debt or liability, either absolute or contingent, issued or purporting to have been issued by lawful authority."

When, under the rules of a reasonable and not too refined construction of language, we read the certificate before us in the light of the statute promising bounties for the destruction of nets and of the section from the Code just quoted, we believe that it might fairly be said to come within the meaning and intent of two clauses of subdivision 3, and that beyond any question it comes within the language of one of them. This paper was a certificate. It purported to have been issued by or under the authority of this state. Its form and express reference to the statute showed this. For the purpose of issuing certificates under the act in question, we believe that defendant might reasonably be said to have been an agent and officer of the state, and by him, in his official capacity, this certificate certainly purported to have been issued. But that is immaterial. Under the provisions of the statute it amounted to a promise for the payment of money by the state. It is not necessary, however, as already suggested, to find the foundation for the indictment here presented in the language just referred to, because, in our judgment, another clause of said subdivision amply and unquestionably includes within its grasp the crime and wrongdoing of which the defendant has been guilty. This language makes the subject of indictment for forgery in the first degree "a certificate * * * or other public security * * * being or purporting to be evidence of any debt or liability, either absolute or contingent, issued or purporting to have been issued by lawful authority." We do not think that the words in the first clause of this subdivision, "issued or purporting to have been issued by or under the authority of this state * * * or by an officer thereof in his official capacity," apply to and qualify this last clause. If they do, it would be superfluous, having referred to a certificate issued or purporting to have been issued by or under the authority of the state or an officer thereof, to then further at the end of the later clause describe the certificate there defined again as "issued or purporting to have been issued by lawful authority." It would be superfluous if the language at the commencement of the subdivision defining a certificate issued under the authority of the state extended forward in its meaning so as to cover the certificate described in the last sentence of the subdivision to again provide that such last-mentioned certificate should be issued, or purport to have

been issued, by lawful authority. If, however, said first-mentioned language does apply to a certificate described in the last sentence, we are unable to see that, taken together, it fails to cover and include a purported certificate such as defendant uttered in this case, and which plainly did purport to be evidence of a debt or liability, and did purport to have been issued by or under the authority of the state, and by lawful authority.

The further idea is suggested in appellant's brief and was amplified upon his argument, as we understand it, that in the crime of forgery there should be affixed to an instrument or paper the purported signature of a person other than the one who utters the forgery; that an instrument cannot be made the subject of forgery which becomes effectively deceptive by the use of the signature of the person himself who utters the paper; that a person, in other words, cannot commit forgery by the use of his own name, as was done in this case. It may, of course, be conceded that the Legislature may see fit to so define a crime of forgery as to necessarily involve the use by one person of the purported signature of another, and this has been done. The case of People v. Mann, 75 N. Y. 486, 31 Am. Rep. 482, relied upon by appellant, presented this feature. The defendant in that case was convicted of forgery in the third degree for issuing some certificates which were signed in his own name as treasurer. The statute under which he was convicted described the crime as falsely making or altering, with intent to defraud, any instrument or writing "being or purporting to be the act of another." It was necessarily held that, when the defendant issued instruments over his own signature, he could not and did not issue those which purported to be the acts of another. We do not think, however, that the section of the Penal Code under review in this case is subject to any such limitation or restrictions of meaning, or that the word "forgery," as used therein, necessarily implies any such element as is suggested by appellant of the use of another person's signature. The section was enacted to take the place of a section of the Revised Statutes which provided that "any person who shall be convicted of having forged, counterfeited, or falsely uttered" certain certificates "with the intent to defraud the people of this state or any public officer thereof or any other person, shall be adjudged guilty of forgery in the first degree." Rev. St. (5th Ed.) pt. 4, c. 1, tit. 3, § 23. The language in such provision conveys to our minds a meaning broad enough to cover defendant's act in this case, and it is not to be inferred that the Legislature, in substituting for it the present section of the Code, intended to radically cut down the definition of the crime then being provided for.

The elementary definition of the word "forgery" is opposed to the contention now being discussed. Bouvier defines it as "the falsely making or materially altering, with intent to defraud, any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." The Century Dictionary describes the crime of forgery as "the act of fabricating or producing falsely; the making of a thing in imitation of another thing * * * with a view to deceive, mislead, or defraud. * * * In criminal law it

denotes (at common law) a false making of an instrument * * * with criminal intent, for purposes of fraud and deceit; * * * the false making of an instrument which purports to be that which it is not, as distinguished from an instrument which purports to be what it really is, but contains false statements." Within these definitions, and others which might be cited, we think that the defendant committed forgery; that he made and uttered a false instrument, which was an imitation, and not what it purported to be, and which, if genuine, upon its face created a legal liability; and that he did this with the design to cheat and defraud. He composed a certificate, which, as we have already held, in form legally satisfied the requirements of the statute allowing bounties. He stated therein what was untrue in regard to the destruction of nets, which furnished the foundation for the allowance of a bounty, and then, to give life and effect to the statement, he affixed to it a false date and a false official signature, which he had lost the right to use. He offended against the spirit, at least, of the rule for which appellant contends. Being a private individual, he made his false certificate effective by affixing thereto the official signature of a public officer, which he was not. The official character of the signature was the important element of the certificate in this respect, and in employing the same it was not very important whether he gave to such official his own name or that of another.

These views upon the purely legal questions involved lead us to the conclusion that the judgment should be affirmed. As already indicated, we have no disposition whatever to interfere upon the facts and merits with defendant's conviction. It is clearly proven by the evidence that in betrayal of his trust he sought to make the public office conferred upon him the means of robbing the public which trusted him. His trial was so correctly and impartially conducted by the learned trial judge that no exceptions to rulings upon evidence are urged. His escape from punishment would be a miscarriage of justice.

Judgment affirmed. All concur, except WILLIAMS, J., who dissents.