31 So.2d 592

John Wesley **WILLIAMS v. STATE.**

4 Div. 456.

Supreme Court of Alabama.

June 12, 1947.

Rehearing Denied July 31, 1947.

A. A. Carmichael, Atty. Gen.; and John O. Harris, Asst. Atty. Gen., for the petition.

J. Hubert Farmer, of Dothan, opposed.

GARDNER, Chief Justice.

Petition of the State, by its Attorney General, for certiorari to the Court of Appeals to review and revise the judgment and decision of that Court in the case of John Wesley Williams v. State, 31 So.2d 590.

Affirmed.

All the Justices concur, except BROWN and SIMPSON, JJ., who dissent.

BROWN, Justice (dissenting).

The defendant who drew the check and signed it as "John Williams" had no bank account in the bank on which the check was drawn but his father John Williams did have such bank account and a check drawn on such account signed by John Williams, the father of defendant, would have been a valid check. From these facts, stated in the opinion of the Court of Appeals, the jury was authorized to draw an inference, as they did, that defendant in signing the name "John Williams" intended to pass said signature off fraudulently as the signature of the father on whose account it was drawn and this constituted forgery. The applicable law exemplified in Ex parte State ex rel. Attorney General (Williams v. The State), 213 Ala. 1, 104 So. 40, 42, which embodies the following quotation from Commonwealth v. Costello, 120 Mass. 358, 370, 371: " 'The essential element of forgery consists in the intent, when making the signature * * * to pass it off fraudulently as the signature of another party than the one who actually makes it. If this intent thus to personate another exists, the instrument is still a forgery, even if the name affixed *is actually the same name with that borne by the party who signs it * * *.'* "* [Italics supplied.] These utterances are supported by a wealth of authority including 2 East P.C. 941 and cases cited.

The rule is also thus stated in 37 C.J.S., Forgery, § 5, page 36: " * * * The essence of the offense is the making of a false writing with the intent that it shall be received as the act of another than the party signing it, * * *."

The intent to defraud is evidenced by the admitted fraudulent misrepresentations as to the ownership of the well stocked farm and a substantial bank account made by the defendant. The statement in the opinion of the Court of Appeals that "There is no evidence whatsoever from which the jury could have inferred that this appellant had falsely made, altered, forged or counterfeited any instrument which purported to be the act of another" is, in my opinion, an inaccurate conclusion on the facts as stated in the opinion of the Court of Appeals. The observation by the Court of Appeals "while under the evidence it may be inferred that this appellant has fraudulently obtained goods, or has violated certain statutes relating to the giving of checks, there is no evidence whatsoever from which the jury could have inferred that this appellant had falsely made, altered, forged or counterfeited any instrument", is not all inclusive.

When the defendant went to the automobile salesman and represented in effect "My name is John Williams. I own a large

farm, well stocked and in a fine state of cultivation out some miles from town and I need an automobile to go from town to my farm", what was he doing? The answer is obvious. He was fraudulently impersonating his father John Williams. When he signed the check "John Williams" and omitted his middle name and the affix "Jr.", what was he doing? He was fraudulently impersonating his father John Williams. The evidence clearly warranted such inference and the jury in finding him guilty declared that inference and correctly so.

I, therefore, respectfully dissent.

SIMPSON, J., concurs.