**LIBERTY NATIONAL BANK & TRUST COMPANY OF LOUISVILLE,**
Plaintiff-Appellant,

v.

**NATIONAL SURETY CORPORATION**
and Maryland Casualty Company,
Defendants-Appellees.

No. 15445.

United States Court of Appeals
Sixth Circuit.

April 17, 1964.

Argued by and on brief W. G. Hume, Louisville, Ky., Brown & Eldred, Louisville, Ky., of counsel, for appellant.

Argued by William A. MacKenzie, Louisville, Ky., John G. Crutchfield, Louisville, Ky., on brief, Jones, Ewen & MacKenzie, Louisville, Ky., of counsel, for appellees.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff bank suffered major losses as a result of swindles perpetrated by two concerns, Gateway Discount Company and York Car Rental Service, Inc. The losses totaled $798,715.93. In both instances the basic mechanism involved in the swindle was for the two companies to present to the bank for its purchase at discount notes secured by automobile chattel mortgages and auto leasing agreements made out in York and Gateway's favor and signed by ostensible lessors or purchasers of said automobiles. The fundamental fraud in the transaction was that of forgery of the names of these automobile purchasers or lessors.

On discovery of the swindle, the bank notified its bonding company and this litigation results from a distinct difference of opinion between the bonding company[1] and the bank over exactly what coverages under the bond in question apply to the losses which have been set forth above. The two paragraphs of the bonding agreement which are in dispute are Clauses (D) and (E):

## "FORGERY OR ALTERATION

"(D) Any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution, or (2) through the payment by the Insured of promissory notes which are payable at the Insured or which are or purport to be notes payable at the Insured under instructions of any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements.

"Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face to face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, shall be deemed to be forged as to such endorsement.

## "SECURITIES

"(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the Insured's having, in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents

[1]. The bond was written by National Surety Corporation. A rider attached showed that defendant, National Surety Corp., underwrote two-thirds of the coverage, and defendant, Maryland Casualty Co., the remaining one-third. Maryland had no other part in this transaction, and for simplicity we refer henceforth to National as "the bonding company" and "the defendant."

upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; EXCLUDING, HOWEVER, any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (D) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D)."

The bonding company paid its full obligation under Clause (E), a sum of $500,000. Coverage under Clause (D) is $1,500,000. Claims under Clause (D) were denied by defendant.

Plaintiff bank in this suit does not claim compensation for all of the balance of the losses. It has segregated from the transactions involved some $78,969.03 of those transactions where the forged names on the contracts were the same as those of actual customers who had accounts in plaintiff's bank.

It is the contention of plaintiff bank that since these were customers of the bank, and the paper concerned could be considered "advices and instructions," that the coverage of Clause (D) should be applicable.

On the other hand, looking at the same Clause (D), defendant bonding company reasons that the paper concerned here, even if it could be construed to be "advices and instructions," constituted advices and instructions "directed to" Gateway and York and not to plaintiff bank. Furthermore, defendant contends that such paper could not be construed as "authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property" within the context of Clause (D).

There are two cases relied on by the parties. Plaintiff cites Provident Trust Co. v. National Surety Co., 44 F.Supp. 514 (W.D.Pa.1942), aff'd 138 F.2d 252 (C.A.3, 1943), cert. denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944), a case in which recovery was allowed under a somewhat similar bond for losses incurred due to the granting of credit on the security of certain warehouse receipts for nonexistent barrels of whiskey.

Defendant bonding company points out that subsequent to the decision in Provident Trust, supra, the wording of Clause (D) of the standard Bankers Blanket Bond had been altered to add to the words "advices and instructions" the additional limiting words "directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or property." These are the same words upon which defendant in this case strongly relies. Defendant says also that the case of First Thrift of Los Angeles v. Pacific Indemnity Co., 95 Cal.App.2d 460, 212 P.2d 560 (1949), recognized this distinction and found in favor of the bonding company where a bond contained this limiting language.

In this diversity case plaintiff calls attention to Kentucky law which says that where there are ambiguities in insurance policies, they should be construed most strongly against the insurer and in favor of the insured. Independence Insurance Co. v. Jeffries, Administrator, 294 Ky. 690, 172 S.W.2d 566 (1943); Equitable Life Assurance Society of United States v. Adams, 259 Ky. 726, 83 S.W.2d 461 (1935).

While these cases state a familiar principle, we do not find the claimed ambiguity in the clause which is principally under construction, Clause (D).

We note at the outset that Clause (D) is entitled "Forgery or Alteration" and deals principally with cases resulting from forgery of commercial paper of the nature of checks or drafts; and that Clause (E) is entitled "Securities" and deals principally with losses resulting

from the purchase or extension of credit on the faith of "any securities, documents or other written instruments." It appears to us that the forged documents under consideration in this case clearly fall within the category of "securities" which were subject to "purchase." It seems clear to us that the forgery of the instant chattel mortgages and leasing agreements falls within the language of Clause (E) (unless covered by the exclusion clause applicable to Clause (D) coverage), and, of course, the full amount of liability under Clause (E) has been paid.

When we turn directly to Clause (D), we find that the paper under guarantee there must be construed to be "advices and instructions directed to the Insured." The chattel mortgages and leases in question, along with the notes they secured, were evidences of debt and securities for those debts. None of the forged chattel mortgages and leasing agreements with which we are concerned were directed to or named the plaintiff bank in any way.

Additionally, we note that under Clause (D) the loss must result from the insured paying funds or property on the faith of "instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property." The paper with which we are concerned herein was not tendered to the bank by the purported "customers" in the basic transactions. The bank never had possession of the automobiles to which these chattel mortgages or leases referred. Actually, plaintiff bank acquired the mortgages and leases at a discount by assignment by Gateway and York—the customary way for a bank to acquire such "securities." We do not see how these instruments can be construed as "directed to the Insured and *authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property.*" (Emphasis added.)

In Provident Trust Co. v. National Surety Co., supra, relied on by plaintiff, the bond did not contain the limiting words "directed to the Insured, etc." which we have discussed in the paragraphs immediately above. Factually, the case closest in point is First Thrift of Los Angeles v. Pacific Indemnity Company, supra, where this limiting language had been added in one of the two bonds therein construed. Recovery under this bond was denied albeit on quite different grounds.

We recognize that the scrivener of a bond of this variety bears the burden of showing no liability by reason of a policy limitation or exclusion. But the complex character of this bond does not automatically render it ambiguous. State Bank of Poplar Bluff v. Maryland Casualty Co., 289 F.2d 544 (C.A.8, 1961).

We agree with the District Judge that defendant has effectively shown that plaintiff's losses were covered under Clause (E) but not under Clause (D).

The judgment of the District Court is affirmed.