The **FIRST NATIONAL BANK & TRUST COMPANY OF OKLAHOMA CITY**, Plaintiff,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY**, a Corporation, and **John Fawcett**, Defendants.

No. 9570.

United States District Court
W. D. Oklahoma.

Aug. 26, 1964.

R. C. Jopling, Jr., Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., for plaintiff.

Edgar Fenton, Fenton, Fenton, Smith & McCaleb, Oklahoma City, Okl., for defendant United States Fidelity and Guaranty Co.

C. Wayne Litchfield, Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for defendant John Fawcett.

BOHANON, District Judge.

This diversity action is one whereby the plaintiff seeks to recover from its insurer the amount of a loss claimed to be compensable under a "Bankers Blanket Bond."

There is no dispute about the facts. On April 22, 1961, defendant United States Fidelity and Guaranty Company issued to the plaintiff bank a Bankers Blanket Bond contract of insurance, a copy of which is attached to the Complaint. The bank extended credit and loaned money to one of its customers, Sadler Brothers Pipeline Construction Co., in the total sum of $129,239.46. Sadler Brothers Pipeline Construction Co. was declared a bankrupt and has been discharged, and there is remaining due to the plaintiff bank the sum of $90,514.44, plus interest.

Between the 5th of January, 1961, and the 16th of February, 1961, Sadler Brothers Pipeline Construction Co. assigned to the bank purported accounts receivable from Champlin Oil & Refining Company, Enid, Oklahoma, to secure credit and money advanced upon notes executed to the bank by Sadler. It is agreed by the parties that this indebtedness is uncollectible. The credit advanced and money loaned by the bank to Sadler was made in good faith. There is no question concerning the authenticity of the signature of Sadler to each of the separate assignments of accounts receivable, and likewise there is no question but that these accounts receivable upon which the bank relied were fictitious and false, but the signature to each assignment of such accounts to the bank was genuine. It was agreed between all the parties that the pertinent language of paragraph (E) "Securities" of the bonds sued upon is applicable to the factual situation presented.

It is also undisputed that United States Fidelity & Guaranty Company issued its Bankers Blanket Bond to the plaintiff on April 22, 1952, and this bond, in the penal sum of $50,000, remained in force until April 22, 1961, and during this period of time Lloyds of London, represented here by the defendant Fawcett, issued to the plaintiff a similar bond for coverage in excess of $50,000 up to One Million Dollars. On April 22, 1961, United States Fidelity & Guaranty Company issued its bond covering losses covered thereby up to One Million Dollars, and the Lloyds policy was either cancelled or not renewed. There is a question raised in the case concerning which bond or bonds covered the loss in question, but my conclusion as to the law in this case makes it unnecessary to resolve this question.

The pertinent portion of paragraph (E) of the bond, entitled "Securities," as pertains to this case is:

"Any loss through the insured's having in good faith and in the course of business, * * * extended any credit * * * on the faith of any * * * documents or other written instruments which prove to have been counterfeited or forged *as to the signature of any maker* * * *"."

I find no ambiguity in the language in the bond, and the language so used must be declared and enforced as written.

█ It is clear from the language of the bond that the liability of the defendant insurance company is limited to instruments which have been "counterfeited or forged as to the signature of any maker, drawer, etc." It is not contended here that a false signature ap-

peared upon the accounts assigned. The words "counterfeited or forged" do not include in their meaning the making of a false statement of fact within the body of an instrument otherwise genuine.

Judge Blackmun, Circuit Judge, in State Bank of Poplar Bluff v. Maryland Casualty Company, 289 F.2d 544 (8 Cir.) gives a clear analysis of the meaning of the words "counterfeited or forged." It is stated in the Opinion, Page 547:

"General definitions tell us that 'forgery' means the 'act of forging, fabricating, or producing falsely', that the noun 'counterfeit' means 'that which is made in imitation of something with a view to deceive', and that the verb 'counterfeit' means 'to imitate'. Webster's New International Dictionary (Second Edition, 1960). The legal definitions place like emphasis, so far as forgery is concerned, upon 'false making or material altering' and upon something 'falsely made, imitated or forged' and, so far as counterfeiting is concerned, upon copying or imitating. Black's Law Dictionary (Fourth Edition, 1951); 23 Am. Jur., Forgery, § 2; 37 C.J.S. Forgery § 1; 14 Am.Jur., Counterfeiting, § 2; 20 C.J.S. Counterfeiting § 1. All this implies to us falsification and lack of genuineness in the instrument itself rather than in its content."

The word "forgery" is defined by the Court of Criminal Appeals of Oklahoma, in Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779, as follows:

"The essence of forgery is the making of a false writing with the intent that it be received as the act of another than the party signing it."

In the case at bar there is no claim or representation that the invoices were the act of another or that the signature on each was not genuine. The assignments were actually what they purported to be; their falsity lies in the representation of facts. See Marteney v. U. S. (C.A. 10 Cir. 1954), 216 F.2d 760; Selvidge v. U. S. (10 Cir.), 290 F.2d 894.

The contracts sued upon in this case contain words of limitation which limit the meaning of the term "counterfeited" or "forged" to the signature of the maker. Certainly no forgery or counterfeiting as to the signature of the maker appears in this case.

In the case at bar plaintiff seeks recovery under paragraph "E" on the ground that the falsity of facts stated in the instruments brings the writing within the language of paragraph "E." This theory disregards the words of limitation that the counterfeiting or forgery must be as to the signature of the maker, etc.

I conclude and hold that the bonds sued upon do not cover the loss sustained by the plaintiff.

The primary question in this case has been before the Courts on several occasions.[1] These cases represent the majority view in dealing with the question involved, and they hold that the language "counterfeited or forged as to the signature of any maker, etc. * * *" does not include the making of a false statement of fact in the body of an instrument, otherwise genuine.

There are cases to the contrary.[2] It is my opinion that these cases do not give proper consideration to the limitations contained in the quoted portion of the

[1]. First National Bank of South Carolina v. Glens Falls Insurance Company (4 Cir.), 304 F.2d 866; First National Bank of Memphis v. Aetna Casualty and Surety Company (6 Cir.), 309 F.2d 702; North Carolina National Bank v. United States Casualty Company (4 Cir.), 317 F.2d 304; United States Fidelity & Guaranty Company v. First National Bank of Fort Morgan, 147 Colo. 446, 364 P.2d 202; State Bank of Poplar Bluff v. Maryland Casualty Company (8 Cir.), 289 F.2d 544.

[2]. Fidelity Trust Company v. American Surety Company of New York (3 Cir.), 268 F.2d 805; Security National Bank of Durand v. Fidelity and Casualty Company of New York (7 Cir.), 246 F.2d 582.

**930**

bonds, and further that they represent the minority view, which I decline to follow.

A proper Judgment will be prepared and filed denying plaintiff the relief sought and entering Judgment for the defendants. The costs to be taxed against the plaintiff.