182 So.2d 366

**P. F. TIARKS et al.**

v.

**FIRST NATIONAL BANK OF MOBILE.**

**1 Div. 149.**

Supreme Court of Alabama.

Jan. 20, 1966.

Hamilton, Denniston, Butler & Riddick, Mobile, for appellants.

T. Massey Bedsole and Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellee.

COLEMAN, Justice.

The underwriters appeal from a judgment for the assured in an action for breach of a contract denominated "Lloyd's Banks' and Trust Companies' Policy."

By the terms of the contract, the underwriters agree to pay and make good to the assured all losses that assured may, during the specified period, discover that assured has sustained in the manner mentioned in the contract, subject always to the terms, exclusions, conditions and limitations thereof, that is to say:

"2. Premises. By reason of any Property being lost through theft or larceny (whether common-law or statutory), or through burglary, robbery, hold-up, false pretences, or mysterious unexplainable disappearance, or being damaged, destroyed or misplaced, howsoever or by whomsoever caused, whilst such Property is (or is supposed to be) in or upon any premises wherever situated, except while in the mail or in the custody of a railway express or air express carrier for the purpose of transportation.

" . . . . . . . . . . .

"4. Forged Cheques, et al. By reason of (a) the forgery or alteration of,

on or in any cheques, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; or (b) the forged signature, endorsement or alteration on or in any written instructions or advices addressed to the Assured by customers or banking institutions; or (c) the payment by the Assured of forged or altered promissory notes or of promissory notes bearing forged endorsements. It is agreed that an endorsement upon a cheque or draft of a fictitious name or an endorsement upon a cheque or draft, procured in a face to face transaction, of the name of anyone impersonated, shall be deemed to be a forged endorsement, and it is further agreed that signatures mechanically reproduced on any background or with other identifying symbols, including the colour thereof, shall be treated the same as handwritten signatures.

" . . . . . . . . . .

"12. Definition of Property. The term 'Property' as used in this Policy shall be deemed to mean Money, Currency, Coin, Bullion, Precious Metals of all kinds and in whatsoever form and articles made thereform, Gems, Precious and Semi-precious Stones, Certificates of Stock, Bonds, Coupons, and all other forms of securities, Bills of Lading, Warehouse Receipts, Cheques, Drafts, Money Orders, Stamps, Insurance Policies, and all other negotiable and non-negotiable instruments or contracts representing money or other property (real or personal) or interests therein, and all other documents, valuables and the like, in which the Assured are interested or the custody of which the Assured have undertaken either gratuitously or otherwise and whether legally liable therefor or not and chattels not hereinbefore enumerated and for which the Assured are legally liable.

"This Policy is subject to the following Exclusions, Conditions and Limitations:—

"13. THIS POLICY IS WARRANTED FREE OF ALL CLAIM:—

" . . . . . . . . : . .

"(D) For loss sustained, either directly or indirectly, by means of forgery and for loss resulting from any loan made by or obtained from the Assured, whether procured through trick, artifice, fraud, false pretences or in good faith, except when covered by Insuring Clause No. 1, No. 4, No. 5 or No. 6 of this Policy.

"(E) For loss sustained, either directly or indirectly, through the forgery or alteration of in or on any bills of lading, warehouse or trust receipts, or bills or receipts serving a similar purpose, except when covered by Insuring Clause No. 1 of this Policy."

We are not concerned with Clause No. 1, which provides coverage for loss caused by infidelity of employees of assured, nor with Clauses No. 5 or No. 6 which pertain to bonds and counterfeit currency.

As important in this case, the policy provides that the underwriters will pay for loss sustained by assured:

"2. By reason of any Property being lost through . . . false pretences . . whilst such Property is . . . in or upon any premises . . . except while in the mail . . . " etc.; and also for loss sustained:

"4. By reason of (a) the forgery . . of, on or in any cheques, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit . . .; or (b) the forged signature . . . on or in any written instructions or advices addressed to the Assured by customers . . .; or (c) the payment by the As-

sured of forged . . . promissory notes . . . ."

The policy excludes claims:

"(D) For loss sustained . . . by means of forgery and for loss resulting from any loan made by . . . the Assured . . . except when covered by Insuring Clause . . . No. 4 . . . of this Policy.

"(E) For loss sustained, either directly or indirectly, through the forgery . . . of . . . any bills of lading, warehouse or trust receipts, or bills or receipts serving a similar purpose . . . ."

The facts are agreed upon. There was no jury. While the policy was in effect during the period from November 1, 1957, to February 1, 1958, assured made loans to Douglas H. Pope, doing business as Douglas H. Pope Company, a sole proprietorship. The loans, aggregating $173,954.12, were evidenced by Pope's promissory notes which purported to be secured by invoices for sales of flour as is shown by copies of the notes and invoices attached to the complaint as Exhibits B–1 through B–37.

Pope was a flour broker in Mobile. He died and at the time of death was indebted to the assured as aforesaid. The assured had made the loans in good faith and in the regular course of business, in reliance upon Pope's obligations evidenced by his notes and in reliance upon the invoices.

After Pope's death, assured discovered that the invoices, purportedly evidencing sales of flour to various customers of Pope and their resulting indebtedness to him, did not in fact represent goods or merchandise sold because no such sales of flour had been made and no such obligations of Pope's customers to him existed.

Pope's estate was insolvent and, after assured's receipt of a dividend from the insolvent estate, and as a result of there being no such sales as were represented by the invoices, assured sustained a loss of $151,275.49.

Assured relies on Insuring Clauses 2 and 4 as the basis of this action and the underwriters rely on exclusion Clauses 13 (D) and 13(E) as the basis of their defense.

There are additional stipulations with respect to coverage which assured could have purchased but did not purchase. We do not think consideration of this matter of additional coverage is necessary.

The court rendered judgment for assured for $191,363.50. Underwriters appeal and assign various rulings of the court as error. We will discuss the assignments that the court erred in rendering judgment for assured.

Count 1 is in code form on an account. It is apparent that no account was proved unless the underwriters are indebted under the policy and the stipulated facts. Further discussion of Count 1 would serve no purpose.

With the exception of the three contracts for the sale of flour which are parts, respectively, of exhibits B–3, B–4, and B–18, which exhibits we consider later, we find no signature of any sort on any exhibit except Pope's signatures on the thirty-seven promissory notes. We find no signature of any sort whatever on any of the thirty-seven invoices. There is a signature on each and all of the notes. As we understand the record, all of Pope's signatures, which appear on the notes, are genuine and it is admitted that he signed them.

In Counts 2 through 5, insured claims the right to recover for loss sustained under various subdivisions of Clause 4 of the policy, respectively, as follows:

In Count 2, "by reason of the forged signature, endorsement or alteration on certain written advices addressed to the plaintiff by a customer." Subdivision (b) of Clause 4.

In Count 3, "resulting from the payment by the plaintiff of forged promissory notes." Subdivision (c) of Clause 4.

In Count 4, "resulting from the forgery of withdrawal orders for the withdrawal of funds." Subdivision (a) of Clause 4.

In Count 5, "by reason of the forged signatures on written advices addressed to the plaintiff by one of its customers." Subdivision (b) of Clause 4.

Thus, assured, in these four counts, rests its right to recover on the assertion that it sustained a loss because it extended credit on the faith of forged writings which were either written advices, promissory notes, or withdrawal orders.

The stipulated facts are that assured made loans in reliance on invoices which are fictitious. The invoices are fictitious and false in that they assert, either expressly or by implication, that Pope had sold and shipped to the customer named on the invoice a certain quantity of flour for a certain price and that the customer was indebted to Pope for the stated amount.

Except for Exhibits B–3, B–4, and B–18, all signatures are genuine, that is to say, the signatures are Pope's signatures and he wrote them. The promissory notes and the invoices purport to be the acts of Pope and they are the acts of Pope. They are exactly what they purport to be, notes and invoices made and uttered by Pope.

Assured claims, however, that the invoices are false and, because they are false, they are forgeries. There are a number of cases decided by other courts which have considered the question whether such fictitious invoices are forged writings. The leading case to support assured's claim that the fictitious invoices are forgeries is Security Nat. Bank of Durand v. Fidelity & Casualty Co. of New York, 246 F.2d 582, (7th Circuit), decided in 1957.

Other cases supporting assured's contention are Merchants' Bank & Trust Co.

v. People's Bank of Keyser, 99 W.Va. 544, 130 S.E. 142; Commonwealth v. Wilson, 89 Ky. 157, 12 S.W. 264; In re Clemons, 168 Ohio St. 83, 151 N.E.2d 553; People v. Kubanek, 370 Ill. 646, 19 N.E.2d 573; People v. Filkin, 83 App.Div. 589, 82 N.Y. S. 15; United States v. Hartman, D.C., 65 F. 490; and Provident Trust Co. v. National Surety Co., D.C., 44 F.Supp. 514.

In *Durand,* a borrower obtained loans from a bank on invoices which purported to represent sales made by the borrower. The sales had not been made and the indebtedness of the purported purchaser shown by the invoices did not exist. The policy indemnified the lender against loss through its having extended credit on " '. . . securities, documents or other written instruments *which prove to have been counterfeited or forged as to the signature* of any maker . . . .' (Emphasis added.)" The insurer argued that, since the signatures on the assignments of the invoices were genuine, no forgery was present because forgery is the making of a writing which purports to be the act of another, and a false statement of fact in the body of an instrument by which a person is deceived and defrauded is not a forgery—the false statement in *Durand* being that the invoices represented actual sales and bona fide indebtedness. The insured insisted that forgery is not confined to the false writing of another's name, that the essence of forgery does not so much consist in counterfeiting as in endeavoring to give the appearance of truth to a deceit and falsity, which can be accomplished by making a man's own act appear to have been done under circumstances which would make it valid when, in fact, it is false.

The court stated that the disposition of *Durand* was governed by Wisconsin law, although no Wisconsin decision had then been found which cast any light on the problem. The court proceeded to decide *Durand* in reliance on Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 7 Cir., 95 F.2d 15, which was an earlier

case decided by the 7th Circuit. The court, in *Durand*, admitted "that Quick apparently represents a minority view."

In *Quick* the court said:

"We understand forgery to include the making or altering, with intent to defraud, of any writing or printing so as to cause the alteration or execution (sic) purport to be the valid act of a person, which it is not. Within its terms are the fraudulent making of words purporting to be what they are not to the prejudice of others' rights—the publication of a false document to the prejudice of others; the false making or material alteration, with intent to defraud, of any writing which, if genuine, would be of legal efficacy or the foundation of legal liability. 12 R.C.L. 139; Wharton on Criminal Law, 12th Ed., 1163; Davis v. State of Georgia, 25 Ga.App. 532, 103 S.E. 819; State v. Hearn, 115 Ohio St. 340, 154 N.E. 244. In Williams v. State, 213 Ala. 1, 104 So. 40, the court held that to constitute forgery there must be a false making; that this might be accomplished by the fraudulent application of a false signature to a true instrument or a real signature to a false instrument; and that the essence of forgery is an intent to injure or defraud at the time the action complained of is done. And this court in Re Count de Toulouse Lautrec, 7 Cir., 102 F. 878, adopted the definition of forgery enunciated by Bishop as the fraudulent making of a false writing which if genuine would be apparently of legal efficacy." (95 F.2d at pages 16 and 17)

In Williams v. State, 213 Ala. 1, 104 So. 40, this court, on application for certiorari, reviewed a decision of the Court of Appeals. Williams v. State, 20 Ala.App. 337, 104 So. 38. The defendant, Williams, indicted for forgery, had uttered a promissory note which purported to have been endorsed by one W. H. Irwin, who is referred to as Irwin No. 1. The defendant did not insist that the note had been endorsed by Irwin No. 1, but claimed that the endorsement was made in good faith by another man named W. H. Irwin, who is referred to as Irwin No. 2. The Court of Appeals held that the trial court erred in its oral charge to the effect that if the note was, in fact, endorsed by Irwin No. 2, and this fact was known to defendant, and defendant negotiated the note as having been endorsed by Irwin No. 1, and that was done with intent to defraud, defendant would be guilty of forgery. The Supreme Court held that the charge of the trial court was not error and reversed the Court of Appeals.

Examination of the opinions of this court and the Court of Appeals in *Williams*, supra, shows that the defendant there was charged with uttering the signature of Irwin No. 2 and representing it to be the signature of Irwin No. 1. There is no question of a genuine signature being affixed to an instrument which contains a false statement of fact. This court quoted with approval from Commonwealth v. Costello, 120 Mass. 358, as follows:

" 'The essential element of forgery consists in the intent, when making the signature or procuring it to be made, to pass it off fraudulently as the signature of another party than the one who actually makes it. If this intent thus to personate another exists, the instrument is still a forgery, even if the name affixed is actually the same name with that borne by the party who signs it. So there may be a forgery by the use of a fictitious name, as well as by the use of a person's own name, if the intent exists to commit a fraud by deception as to the identity of the person who uses the name. 2 East P.C. 941, and cases cited. Mead v. Young, 4 T.R. 28; Regina v. Rogers, 8 C. & P. 629; Rex v. Whiley, Russ. & Ry. 90; Commonwealth v. Foster, 114 Mass. 311. Where a party signs a name not his

own, but one which he has adopted, using it without the intent to deceive as to the identity of the person signing, it is not a forgery. Rex v. Bontien, Russ. & Ry. 260, and cases cited; Rex v. Peacock, Russ. & Ry. 278, 282.'" (213 Ala., at page 3, 104 So. at page 42)

In 213 Ala. at page 2, 104 So. at page 41, however, this court also said:

"A consideration of the cases will disclose as elements of forgery (1) that there must be a false making— and this may be accomplished by 'the fraudulent application of a false signature to a true instrument, or a real signature to a false' instrument; . . . ."

We are not certain as to the exact source from which this court took the quoted phrase "the fraudulent application of a false signature to a true instrument, or a real signature to a false" instrument. This phrase is one of those glib expressions which stick in the memory, but which can mislead unless the meaning is carefully understood when the phrase is applied to an actual state of facts. This phrase may be, in part, the cause of the confusion which has arisen as to whether certain writings constitute forgeries. The earliest statement of this phrase which we have found is in the argument for the prisoner in Regina v. White, (1847), 2 Car. & K. 404, 175 Eng. Rep. 167, Nisi Prius, Book 6, where counsel said:

". . . It therefore seems to be essential to the crime of forgery that a person should put forth the forgery as the writing of another, it being either false entirely, or made false by adding or taking away (g), and it must either be a false instrument to a true signature, or a true instrument with a false signature. . . ." (2 Car. & K., at page 408)

The case referred to in the footnote (g), supra, is reported in Noy's Reports, 101, as follows:

"For a forgery of a will of one Brokenburye, it was held by Popham, Flemming and Yelvert, that if he that writes a will omits a thing that was appointed to be put in, that is not forgery; but if the devise had been to A. for life, the remainder to B. in fee, and he that writes the will omits the estate for life to A., by which the fee is presently to B., that is forgery." Combe's case, Noy, Rep. 101; Moore, 759.

It thus appears that what is meant by applying a "false instrument to a true signature" is to make the instrument to which the true signature is affixed, not an instrument which expresses the act of the person whose signature it bears, but an instrument which expresses the act of the person who applies the true signature to the instrument; or, as expressed by counsel in Regina v. White, supra, to put forth "the forgery as the writing of another." Such is the meaning of the phrase, application of a false instrument to a true signature.

This meaning is further illustrated by the statement of Wilde, C. J., in Regina v. White, supra, as follows:

"If a man write in his own name, 'I have authority to obtain such and such goods from you;' that would not be a forgery even if he had no such authority. . . ."

Our statute, Title 14, § 200, recites that:

"Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits, or totally obliterates any will . . . or other instrument, being or *purporting to be the act of another,* by which any right or interest in property is, or purports to be transferred . . . is guilty of forgery in the second degree." (Emphasis Supplied.)

In reversing a conviction for forgery, and holding the indictment insufficient where it charged that defendant used a name, by which he was known, in signing a check, the Court of Appeals said:

."The real test seems to be: Did the party signing the check intend to commit a fraud by deception as to the identity of the person who uses the name? . . ." Harris v. State, 19 Ala.App. 484, 486, 98 So. 316.

In Williams v. State, 33 Ala.App. 119, 31 So.2d 590, affirmed in 249 Ala. 432, 31 So.2d 592, the Court of Appeals reversed a conviction for forgery and held the evidence insufficient where "John Wesley Williams," also known as "John Williams, Jr.," signed the name "John Williams" to a check, misrepresenting that he had a substantial bank account. The court said:

"While under the evidence it may be inferred that this appellant has fraudulently obtained goods, or has violated certain statutes relating to the giving of checks, there is no evidence whatsoever from which the jury could have inferred that this appellant had falsely made, altered, forged or counterfeited any instrument which purported to be the act of another. Such elements are essential to constitute*d* forgery in the second degree as defined in Section 200, Title 14, Code of Alabama 1940." (33 Ala.App., at page 121, 31 So.2d at page 591.)

Assured, in brief, points out that § 199, Title 14, in defining forgery in the first degree, omits the words "purporting to be the act of another," which words are used in § 200, Title 14. Assured argues that this omission indicates a legislative recognition that forgery may be committed by means of an instrument which does not purport to be the act of another than the one signing it. Let us examine § 199 and see if assured's argument is sound.

§ 199 makes guilty of forgery in the first degree, any person who, with intent to injure or defraud any person, etc., "alters, forges, or counterfeits any bill, note, draft, check, certificate, or other evidence of debt, *issued by any incorporated bank* or banking company . . . or *by* the authority of *any law of the United States,* or

*private bank,* or *by any officer* authorized to issue the same, or *drawn on any* incorporated *bank or banking company, or* on the *treasurer of this state;* or who, with such intent, utters . . . any falsely altered, forged, or counterfeited bill . . . or other evidence of debt, *so issued* . ." (Emphasis Supplied.)

■ It readily appears that § 199 relates to the making of commercial paper. The forbidden acts are to alter, forge, or counterfeit. The word, "forges," is not defined. It must be taken to have its common law meaning. We think the common law meaning requires a false making. It would seem difficult for a person to forge a commercial paper of the kinds listed, unless the paper should purport to be the act of another than the maker of the paper. If such commercial paper be the act of the person whose act the paper purports to be, it may, be fraudulent and made with intent to defraud, as a check drawn on a bank where the drawer had no account, but making such. a check is not forgery. Williams v. State,. 33 Ala.App. 119, 31 So.2d 590.

Whether, however, our reasoning as to the necessity of false making under § 199 be correct or not, it is sufficient answer to assured's argument to observe that the invoices, in the case at bar, were not issued by any bank or by authority of any law of the United States or by any officer of any bank, and were not drawn on any bank or on the treasurer of this state; and, since that is true, the invoices are not made forgeries by § 199 because the invoices are not a kind of paper included within the provisions of § 199.

We have found nothing in our decisions or statutes to persuade us that a writing, which purports to be the act of the person who actually made it, becomes a forgery when the writing contains a statement that is not true.

As stated above, the court in the *Durand* case, undertook, in 1957, to decide according to Wisconsin law. Later, when the same

question came before the Supreme Court of Wisconsin in 1964, that court declined to follow the 7th Circuit and said:

" . . . In our view, false making relates to genuineness of execution, Marteney v. United States (10th Cir. 1954), 216 F.2d 760, while alteration may relate to falsity of content. . . .

" . . . . . . . . .

"We are not willing to restrict the counterfeiting coverage of Clause (E) to signatures. However, we consider these writings to be exactly what they purport to be,—copies of invoices. That goods covered by the original invoices had been shipped to fill purchase orders was a false representation contained in the body of the invoices and made by delivering the copies to plaintiff. Sischo obtained his loans by false pretenses, not by uttering forged or counterfeited writings." First American State Bank v. Aetna Cas. & Sur. Co., 25 Wis.2d 190, 130 N.W.2d 824, 826, 827.

In *Marteney*, supra, the court said:

"As used in criminal statutes, the words 'falsely made' and 'forged' are homogeneous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content. . ." (216 F.2d, at page 763)

 In the instant case, the notes and invoices are admittedly the acts of Pope, and are thus the acts of the party whose acts they purport to be. We are, therefore, of opinion that they are not forgeries. It follows, then, that assured is not entitled to recover under those provisions of Clause 4 of the policy which provide indemnity for loss caused by reliance on forged instruments.

Other cases so holding as to fictitious writings are: State Bank of Poplar Bluff v. Maryland Casualty Co., 289 F.2d 544; Pasadena Investment Co. v. Peerless Casualty Co., 132 Cal.App.2d 328, 282 P.2d 124, 52 A.L.R.2d 203; First Nat. Bank of Memphis v. Aetna Cas. & Surety Co., 6 Cir., 309 F.2d 702; First Nat. Bank of South Carolina v. Glens Falls Ins. Co., 4 Cir., 304 F.2d 866; United States F. & G. Co. v. First Nat. Bank of Ft. Morgan, 147 Colo. 446, 364 P.2d 202; First Nat. B. & T. Co. of Oklahoma City v. United States F. & G. Co., D.C., 232 F.Supp. 927; affirmed, 10 Cir., 347 F.2d 945; Exchange National Bank of Olean v. Insurance Co. of North America, 341 F.2d 673.

In Count 6, assured seeks to recover for loss "resulting from false pretenses," which count must depend on Paragraph 2 of the policy where the underwriters agree to indemnify for loss "By reason of any Property being lost through . : . false pretenses . . ."

 If assured's loss be a loss, through false pretenses, of property, as defined in the policy, then assured would be entitled to recover under Count 6, except for Exclusion Clause (D). We pretermit deciding whether assured's loss is a loss of property, as property is defined in the policy. We do decide that the loss is excluded from coverage by Clause (D).

Assured contends that Clause (D) must be read conjunctively and that a loss is not excluded by Clause (D) unless the loss is at one and the same time a loss resulting from forgery and also a loss resulting from a loan obtained from the assured. Thus, assured reasons, that although the loss here sued for did result from loans obtained from the assured, that the loss is, nevertheless, not excluded if we should decide, as we have decided, that the loss was not sustained by means of forgery. To support this argument, assured relies on the rule that an ambiguous provision of an insurance policy is to be construed liberally in favor of the insured. United States Fire Ins. Co. v. Hodges, 275 Ala. 243, 154 So.2d 3.

Equally well established is the rule that the true intent governs insurance contracts, and, while doubtful terms are construed in favor of the insured, no strained construction should be indulged to raise doubt. Home Loan & Finance Co. v. Fireman's Fund Ins. Co., 221 Ala. 529, 129 So. 470.

Does Clause (D) exclude a loss "sustained by means of forgery," although the loss did not result from a loan made by the assured? Does Clause (D) exclude a loss "resulting from any loan made by . . . the Assured," although the loss was not sustained by means of forgery? Or, does Clause (D) exclude only those losses which are both sustained by means of forgery and also result from a loan?

We think Clause (D) excludes a loss sustained by means of forgery, although the loss does not result from a loan, and that Clause (D) also excludes a loss which results from any loan, although forgery is not involved. This we think is the clear meaning of the language employed.

If the draftsman had intended to require that both forgery and a loan should be present before the exclusion had effect, he could have done so by saying:

"For loss sustained, either directly or indirectly, by means of forgery and resulting from any loan . . . "

Instead, the language used is:

"For loss sustained, either directly or indirectly, by means of forgery and for loss resulting from any loan . ."

The language used refers to two kinds of losses. The word, loss, is used twice. If only one kind of loss had been intended, the word, loss, should have been used only once.

We are of opinion that Clause (D) excludes "losses resulting from any loan," whether forgery be present or not, and that assured in the instant case is not entitled to recover under Count 6.

We come now to Exhibits B–3, B–4, and B–18. Each of these exhibits contains what purports to be a contract for the sale of flour signed by Pope as seller, and by another person as buyer. Assured says the signatures of the buyers are forged and assured is entitled to recover under Clause 4(b) for loss sustained by reason of forged signatures on written advices addressed to the assured by one of its customers. If these signatures are not the signatures of the persons whose signatures they purport to be, then, the contracts are forged writings.

The word, advices, is not defined in the policy and it can be argued that the contracts come within the meaning of advices as used in the policy. Provident Trust Co. v. National Surety Corporation, 3 Cir., 138 F.2d 252.

Clause 4(b), however, imposes on the right to indemnity for loss by reason of the forged signature on advices, the condition that the advices be "addressed to the Assured by customers or banking institutions." See Liberty Nat. B. & T. Co. of Louisville v. National Surety Corp., 330 F.2d 697, where the court, in denying recovery on forged paper said:

"When we turn directly to Clause (D), we find that the paper under guarantee there must be construed to be 'advices and instructions directed to the Insured.' The chattel mortgages and leases in question, along with the notes they secured, were evidences of debt and securities for those debts. None of the forged chattel mortgages and leasing agreements with which we are concerned were directed to or named the plaintiff bank in any way." (330 F.2d, at page 700)

None of the three contracts in the instant case was directed to or named the assured in any way. We do not find that either of the contracts was assigned or any rights thereunder transferred to insured. The notes recite that they are secured "by Invoice attached hereto." The invoices were

mentioned in and transferred by the notes, but the contracts were not.

Address, as a verb is defined as:

"7. To direct in writing, as a letter; to superscribe, or to direct and transmit; as he *addressed* a letter." Webster's New International Dictionary, G. & C. Merriam Co., 1926, page 26.

We are of opinion that even if the contracts be forged and be advices, as defined in the policy, the contracts were not "addressed to the Assured by customers or banking institutions," and that assured is not entitled to recover under Clause 4(b) for the loss sustained by reason of Exhibits B-3, B-4, and B-18.

We are of opinion that judgment is due to be rendered for the underwriters and the judgment is reversed and the cause remanded for entry of such a judgment.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.